[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10852

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 2, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00044-SPM-AK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH T. LANDER,
a.k.a. Joey Lander,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 2, 2012)

Before WILSON and COX, Circuit Judges, and RESTANI,* Judge.

PER CURIAM:

---

*Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

A jury convicted Joseph T. Lander on mail fraud and money laundering charges related to two separate fraudulent schemes. One of these schemes involved Lander's conversion of funds developers gave him to hold in trust for future expenses associated with their River Shores at Jena development (the "River Shores Scheme"). In the other scheme, Lander convinced one of his victims to make a significant investment in a vitamin company he was starting called GenSpec Labs, LLC by misrepresenting the expected return on this investment and the viability of the company (the "GenSpec Scheme"). The superseding indictment alleged that Lander executed these schemes using the mail and engaged in monetary transactions with the money he derived from the River Shores Scheme. The jury convicted Lander on sixteen of the twenty-one counts in the superseding indictment. Lander now appeals, challenging his convictions and sentences on various grounds.

We conclude that the proof presented at trial in connection with the River Shores mail fraud count (Count Two) materially varied from the allegations contained in the superseding indictment. This variance substantially prejudiced Lander and we reverse his conviction on this count. We also reverse his money laundering convictions (Counts Four through Fourteen) because they were predicated on the River Shores mail fraud count. We affirm Lander's mail fraud

convictions related to the GenSpec Scheme. And, we decide Lander's other assertions of error lack merit.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FACTS

Lander worked as an attorney in Dixie County, Florida. There, he practiced law and served as the county attorney.[1] Lander's business dealings extended beyond his legal work, however. He also tried to start and was the majority owner of a vitamin company called GenSpec Labs, LLC ("GenSpec").

#### 1.  River Shores Scheme

The nature of this scheme demonstrates the blurry line between Lander's private practice and his work as county attorney in this case. A group of real estate developers planning a project called River Shores at Jena ("River Shores") in Dixie County retained Lander to help guide their project through the county's regulatory process. When they initially met Lander they did not know he was the county attorney, but they quickly became aware of this fact through their meetings with him. In order to "give a level of security to the prospective buyers that [the developers] would finish the development," (Dkt. 190 at 96), the developers gave

---

[1]  Because Lander challenges the sufficiency of the evidence to support his convictions, we state the facts in the light most favorable to the Government. *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citations omitted).

Lander $820,000 in August of 2005 to be held in trust to draw against as the developers incurred infrastructure expenses.

Lander then opened an account called the "Lander Law Firm – Special Account" to hold the developers' funds. But, not all of these funds helped complete River Shores. For example, Lander made a $140,980 withdrawal from the account to buy an island off the western coast of Florida. He also used the money for various other personal expenses. These personal withdrawals continued until December of 2007 when Lander depleted and closed the account.

While Lander was making personal draws on the account, he also fulfilled two of the requests from the developers for money from the account. Lander mailed a $200,000 cashier's check drawn from the account on August 17, 2005. In early 2006, Lander fulfilled another request for $300,000. According to one of the developers, he did not question that Lander still held the other $320,000 because Lander remitted these two requests in a timely manner. When the developers made a third request for funds, Lander denied it and informed them that the county commissioners were not comfortable with the project and the rest of the money would be released when they finished the project.

2. GenSpec Scheme

In the summer of 2005, Lander was also busy soliciting investors for a business venture he called GenSpec. According to Lander, GenSpec marketed vitamins for specific racial and ethnic groups and "it was the hottest thing on the market." (Dkt. 191 at 50.) He told potential investors he already had contracts with various major retail outlets to sell the vitamins and promised a quick return on investment. In fact, Lander had not secured these contracts and did not pay the promised dividends.

One of GenSpec's investors was Kathy Veach. Lander sought a $1 million buy in from Veach in exchange for a 1.5% share of GenSpec. He convinced Ms. Veach to meet part of this obligation by providing a $127,745.90 cashier's check so that Lander could buy a Maserati automobile. Because Veach did not have enough money to pay the buy in, Lander also told her that an individual named Henry Fred "Mitch" Mitchell would lend her $500,000. Veach agreed to this loan and gave Lander $50,000 as payment for the loan origination fee. She then began mailing installment payments of $4,166.67 to Mitchell. Much like the promised GenSpec dividends, this loan was illusory. Mitchell never agreed to loan $500,000 to Veach. Rather, Mitchell acknowledged that Lander owed him money, so he applied part of Veach's payments to this debt and then remitted the rest to Lander.

B.  PROCEDURAL HISTORY

1.  The Indictment

The grand jury returned a twenty-one count superseding indictment against Lander.  Sixteen of those counts concern us here.[2]  Count Two of the indictment relates to the River Shores Scheme and is explained more fully below.  Counts Four through Fourteen charge Lander with money laundering by engaging in a monetary transaction in property of a value greater than $10,000 derived from mail fraud, in violation of 18 U.S.C. § 1957.  These counts are based on various withdrawals Lander made from the Lander Law Firm – Special Account.  Counts Fifteen through Nineteen also charge mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 in connection with Lander's GenSpec Scheme.  Specifically, the indictment alleges that Lander used his position of trust as an attorney to convince people to invest in this business.  It alleges that Lander falsely told potential investors he had contracts with major retail stores to sell GenSpec products and that a quick investment was needed to ensure that the individuals received dividends.  Finally, it contends Lander used the mail to execute this scheme.

_____

[2]  The jury returned a verdict of not guilty on Count One (mail fraud).  The district court granted a judgment of acquittal on Count Three (mail fraud) and Count Nineteen (principal to mail fraud).  The Government dismissed Count Twenty (wire fraud) and Count Twenty-one (making a false statement to an FDIC bank).

7

### 2. Motions for Judgment of Acquittal

Near the close of the Government's case in chief, Lander moved the court for a judgment of acquittal. Lander argued that there was insufficient evidence to support the counts against him. He renewed this motion at the close of the Government's case. The court granted the motion as to Counts Three and Nineteen because it found that there was no mailing to support these two mail fraud counts. After the jury returned its verdict, Lander again moved the court for a judgment of acquittal. This motion asserted that the Government's evidence did not prove any scheme to defraud so he should be acquitted of the mail fraud and the accompanying money laundering counts. The motion also claimed that the Government had constructively amended the indictment by presenting at trial a scheme to defraud different from the one alleged in the indictment. The court denied this motion.

### 3. Sentencing

After a five-day trial, the jury convicted Lander on sixteen counts. The presentence investigation report established a guideline imprisonment range of seventy to eighty-seven months. The court sentenced Lander to an eighty-seven month term of imprisonment as to each count, to run concurrently.

## II. ISSUES ON APPEAL

Lander raises the following issues on appeal: (1) whether a constructive amendment to or material variance from the superseding indictment occurred; and (2) whether the court erred by denying his motion for judgment of acquittal because the evidence does not support any of his convictions.[3]

## III. DISCUSSION

### A. MATERIAL VARIANCE

Lander argues before this court, as he did in his Motion for Judgment of Acquittal,[4] that the facts proved at trial to support the River Shores mail fraud charge (Count Two) materially varied from the allegations of the superseding indictment. According to Lander, this variance substantially prejudiced his rights and his conviction on this count should be reversed. We agree.

---

[3] Lander also raises other issues on appeal: (1) whether the court erred by denying his second motion for a mistrial; (2) whether the court erred by denying his motion to dismiss the indictment due to grand jury bias; and (3) whether the court erred by denying his emergency motion to continue. We reject Lander's arguments on these issues and none of them warrant further discussion. Also, because we reverse twelve of the sixteen counts of conviction and remand for resentencing, we will not address Lander's challenge to his current sentence.

[4] Lander's Motion for Judgment of Acquittal stated, "Instead of arguing the information contained in the indictment, the Government presented evidence that they believed constituted an alternative scheme to defraud which went well beyond the four corners of the indictment, constituting a constructive amendment to the indictment." (Dkt. 127 at 16.) While Lander labeled this a constructive amendment, we understand this contention as arguing a material variance. When the district court denied Lander's motion, it too understood Lander as having made a material variance argument. Thus, we have no trouble concluding that Lander preserved this issue for appeal.

Count Two of the indictment alleges that Lander

> did knowingly and willfully devise and intend to devise a scheme to defraud and to fraudulently deprive another of the intangible right of his honest services as County Attorney for Dixie County, Florida, and to obtain money and property and by means of material false and fraudulent pretenses, representations and promises, and for the purpose of executing this scheme to defraud, and attempting to do so, did knowingly cause matters to be deposited with and delivered by the United States Postal Service

in violation of 18 U.S.C. §§ 1341 and 1346.  (Dkt. 66 at 1-3.)

The indictment continues by describing this scheme to defraud.  It states that Lander in his capacity as county attorney falsely represented to developers that they were required to pay a performance bond to Dixie County through him as county attorney.  According to the indictment, Lander then opened the "Lander Law Firm – Special Account"; deposited $820,000 as payment for the performance bond in the account; concealed the fact he deposited the money into his own law firm account by causing cashier's checks to be issued from the account; and converted $320,000 of the fraudulently obtained funds.  By this conduct, the indictment alleges that Lander deprived the citizens of Dixie County of their right to honest services.

"The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold:  First,

10

whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result." *United States v. Chastain*, 198 F.3d 1338, 1349 (11th Cir. 1999) (citing *United States v. Prince*, 883 F.2d 953, 959 (11th Cir. 1989)). We have called an allegation of a variance in essence "one form of challenge to the sufficiency of the evidence." *United States v. Jenkins*, 779 F.2d 606, 616 (11th Cir. 1986). "A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Caporale*, 806 F.2d 1487, 1499 (11th Cir. 1986) (citing *United States v. Johnson*, 713 F.2d 633, 643 n.9 (11th Cir. 1983)). To find substantial prejudice, we have ordinarily considered whether "the proof at trial differed so greatly from the charges that appellant was unfairly surprised and was unable to prepare an adequate defense." *United States v. Calderon*, 127 F.3d 1314, 1328 (11th Cir. 1997) (citations omitted).

The Government concedes that the only possible basis for conviction on Count Two of the indictment is pecuniary mail fraud under 18 U.S.C. § 1341.[5] (Appellee's Br. at 36 n.3.) To prove that Lander committed mail fraud, the

---

[5] The Government argues that Count Two of the superseding indictment alleged honest services fraud and pecuniary fraud. According to the Government, this gave it a choice at trial to prove only a pecuniary fraud scheme and the jury could properly convict on this basis. This argument fails to address Lander's claim that the allegations of the indictment materially varied from the proof at trial.

Government had to show that he "(1) intentionally participated in a scheme to defraud; and (2) used the mails to further that scheme." *United States v. Brown*, 40 F.3d 1218, 1221 (11th Cir. 1994) (citing 18 U.S.C. § 1341; *United States v. Wingate*, 997 F.2d 1429, 1432 (11th Cir. 1993)). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Svete*, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009) (en banc)). The indictment met this requirement for a material misrepresentation by alleging that Lander "falsely represented to certain developers having business before Dixie County that the developers were required to pay a performance bond to Dixie County." (Dkt. 66 at 2.) We agree with Lander that this allegation in the indictment materially varies from the proof at trial.

In fact, the evidence at trial, even when considered in the light most favorable to the Government, disproved that Lander made this misrepresentation. For example, when one of the developers was asked whether Lander ever represented to them that Dixie County required a performance bond, he responded: "Not that I recall." (Dkt. 189 at 146-47.) Another one of the developers stated that Lander never told her that the developers needed to post a performance bond.

12

And, the Government points to no place in the record where the evidence at trial supports the charge that Lander misrepresented to the River Shores developers that they needed to post a performance bond. Without this misrepresentation to support the River Shores scheme to defraud, the Government shifted its trial strategy. During its closing argument, it appeared to rely on Lander's representations to the developers that he could make sure their project moved through the regulatory process. At oral argument before this court, the Government suggested the misrepresentation occurred when Lander said he would hold the $820,000 in trust for development expenses. In either case, the misrepresentation the Government relies on does not coincide with the allegations of the indictment. The scheme to defraud is an essential element of the mail fraud charge. Thus, we conclude there was a material variance from the indictment.

Next, we must decide whether this variance substantially prejudiced Lander. We hold that it did. As our precedent explains, the rationale behind the material variance rule is that the accused be informed of the charges against him and that he not be surprised by the evidence offered at trial. *Thompson v. Nagle*, 118 F.3d 1442, 1453 (11th Cir. 1997) (citing *Berger v. United States*, 295 U.S. 78, 82, 55 S. Ct. 629, 630 (1935)). This justification is grounded in the fundamental requirement that an indictment "apprise[] the defendant of what he must be

13

prepared to meet." *Russell v. United States*, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 1047 (1962) (citations omitted) (quotation marks omitted).

The Government tries to rely on a scheme to defraud entirely different from the one alleged in the indictment to support Lander's River Shores mail fraud conviction. But, any misrepresentation the jury may have reasonably relied upon to support its conviction on Count Two differed from the misrepresentation charged in the indictment. As such, the indictment failed to put Lander on notice of the crime for which he was convicted—Lander could not prepare a defense to a scheme to defraud that does not appear in the indictment.

We decide that any proof the Government may have offered at trial to support the jury's verdict on Count Two varied so greatly from the allegations of the indictment that Lander was unable to prepare his defense. When a material variance substantially prejudices the defendant as it does here, this variance constitutes reversible error. *See United States v. Narog*, 372 F.3d 1243, 1247 (11th Cir. 2004). Therefore, we reverse Lander's conviction on Count Two.

B. SUFFICIENCY OF THE EVIDENCE

Lander challenges the sufficiency of the evidence on all counts. We review de novo the district court's denial of a judgment of acquittal on sufficiency of the evidence grounds. *United States v. Yates*, 438 F.3d 1307, 1311-12 (11th Cir.

14

2006) (en banc) (citing *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999)).  We view the evidence in the light most favorable to the Government and resolve any conflicts in the evidence in favor of the Government.  *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citations omitted).  "[T]he evidence is sufficient to support a conviction if 'a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'"  *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008) (quoting *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996)).

### 1.  Money Laundering Counts (Counts Four Through Fourteen)

Lander contends the evidence is insufficient to support his convictions for money laundering in violation of 18 U.S.C. § 1957.  A conviction under § 1957 requires proof that Lander "knowingly engaged or attempted to engage in a monetary transaction in criminally derived property that is of value greater than $10,000 and is derived from specified unlawful activity."  *United States v. Johnson*, 440 F.3d 1286, 1289 (11th Cir. 2006) (citations omitted) (quotation marks omitted).  To satisfy the "specified unlawful activity" prong of the money laundering charges, the Government relied on the mail fraud charge in Count Two of the indictment.  Because we reverse Lander's conviction on Count Two, we reverse Lander's convictions on Counts Four through Fourteen as well.

15

## 2. GenSpec Mail Fraud (Counts Fifteen Through Eighteen)

Lander argues that the evidence did not establish that he committed mail fraud in connection with the GenSpec Scheme. The offense of mail fraud consists of "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." *United States v. Smith*, 934 F.2d 270, 271 (11th Cir. 1991) (quoting *United States v. Downs*, 870 F.2d 613, 615 (11th Cir. 1989)).

Lander asserts that the district court erred by denying his motion for judgment of acquittal on these counts because the Government failed to prove GenSpec was a fraudulent venture. We reject this argument. To prove mail fraud, the Government did not have to establish that GenSpec itself was fraudulent. Rather, the Government had the burden to prove that Lander engaged in a scheme to defraud GenSpec investors. The evidence was sufficient to prove Lander intentionally tried to defraud GenSpec investors of money or property.

The evidence at trial established that Lander misrepresented the prospects of GenSpec by telling Veach that she would recover her investment within six months. He also lied to her when he told her he already had lined up endorsements and contracts with major distributors. After convincing Veach to invest in GenSpec through misrepresentations like these, Lander made a

16

fraudulent arrangement to help Veach pay a portion of the $1 million buy in Lander demanded. Lander told Veach that a third party, Mitchell, would loan her the money and convinced Veach to pay Lander a $50,000 loan origination fee and then mail Mitchell checks to pay off her debt. Lander later admitted, and Mitchell testified, that Mitchell never made a loan to Veach. Instead, Mitchell used a portion of Veach's payments to pay off a debt Lander owed Mitchell and then remitted the balance to Lander. Based on this evidence we conclude a reasonable jury could find that Lander intentionally devised a scheme to defraud and used the mail in furtherance of that scheme. We affirm his convictions on these counts.

## IV. CONCLUSION

We conclude the material variance between the proof offered by the Government at trial and the allegations in support of Count Two of the indictment substantially prejudiced Lander's ability to prepare his defense. Therefore, we reverse Lander's conviction and vacate his sentence on Count Two. The money laundering charges in Counts Four through Fourteen depended on this mail fraud conviction, so we reverse these convictions and vacate these sentences as well. We affirm Lander's convictions on Counts Fifteen through Eighteen. And, we reject Lander's other assertions of error. During sentencing, the district court considered all of the counts of conviction. Because we reverse his convictions on

17

Counts Two and Four through Fourteen, we vacate Lander's sentences on all counts and remand for resentencing.[6]

AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED IN PART.

---

[6] During resentencing, the district court should recalculate the amount of loss in this case in light of our reversal of Counts Two and Four through Fourteen.