[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10993

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-00171-CG-N-1

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

MICHAEL TURNER,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 18, 2012)

Before CARNES, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

        A jury convicted Michael Turner of one count of bankruptcy fraud, in violation

of 18 U.S.C. § 152(1), and four counts of making false entries in his bankruptcy

filings with the intent to impede, obstruct or influence his bankruptcy case, in violation of 18 U.S.C. § 1519. The district court sentenced Mr. Turner to 27 months' imprisonment, followed by three years of supervised release, and ordered him to pay $28,500.00 in restitution and $500 in special assessments. Mr. Turner now appeals his convictions and sentence. Following oral argument and a review of the record, we vacate the conviction on Count 6, affirm the remaining convictions, and remand for resentencing.

I

As of early 2007, Mr. Turner owned several rental properties. On January 13, 2007, one of those properties, a house located at 608 Bella Street in Prichard, Alabama, was destroyed by a fire. The property was insured by Baldwin Mutual Insurance Company, Inc., which sent an insurance adjuster to inspect the property on January 17, 2007. Because the insurance policy had a $40,000 limit and the damage to the property exceeded that amount, Mr. Turner and the adjuster agreed to settle the claim for the full amount of the policy. On January 31, 2007, Mr. Turner received a check for $40,000 from Baldwin Mutual. The check was made out to Mr. Turner and Commonwealth National Bank, which held a mortgage on the Bella Street property.

Mr. Turner filed a voluntary Chapter 13 bankruptcy petition on February 2, 2007. Three days later, Mr. Turner negotiated the insurance check at Commonwealth.

2

Mr. Turner used $11,500 of the insurance proceeds to pay off the mortgage on the property, and deposited the remaining $28,500 into a business checking account maintained at Commonwealth for Redman Down South Enterprises, LLC, his solely owned proprietorship. Mr. Turner was the only signatory on that account. That same day, Mr. Turner made two cash withdrawals from the account—one for $2,000 and one for $8,000—and rented a safety deposit box at Commonwealth, which he visited after receiving the proceeds.

The following day, February 6, 2007, Mr. Turner returned to Commonwealth, withdrew another $8,000 from the Redman Down South account, and again visited his safety deposit box. Mr. Turner did the same thing the very next day—he went to Commonwealth, withdrew $8,000 in cash, and visited his safety deposit box. Thus, over the course of three days, and shortly after filing for bankruptcy, Mr. Turner withdrew $26,000 of the $28,500 he had deposited into his business checking account.

The bankruptcy court gave Mr. Turner until February 17, 2007, to file his schedules and his Statement of Financial Affairs. Notwithstanding the deadline and the fact that he had signed (and presumably filled out) the forms on January 25, 2007, Mr. Turner did not file them until April 3, 2007. These forms require a bankruptcy debtor to list, among other things, his personal property, bank accounts, income, and

3

debts.

In his filings, made under penalty of perjury, Mr. Turner failed to disclose the $40,000 payment he received from Baldwin Mutual, his interest in Redman Down South and his control over the entity's checking account, the $28,500 he deposited into that account, the $26,000 in cash withdrawals he made the week after filing for bankruptcy, and the safety deposit box he rented at Commonwealth. He also indicated that the Bella Street property was worth $10,600 and listed the mortgage on that property as $50,000 when it was only $11,500.[1]

In 2010, a grand jury returned a six-count indictment against Mr. Turner. Count 1 charged that Mr. Turner knowingly and fraudulently concealed both the $40,000 paid to him by Baldwin Mutual and his interest in Redman Down South, in violation of 18 U.S.C. § 152(1). Counts 2–6 charged that Mr. Turner knowingly made false entries in his schedules and Statement of Financial Affairs, in violation of 18 U.S.C. § 1519.[2] The jury found Mr. Turner guilty on Counts 1, 2, and 4–6, and acquitted him

---

[1] On November 20, 2007, the Chapter 13 trustee filed a motion to convert Mr. Turner's case into a case under Chapter 7, which the trustee testified at trial is considered a less desirable proceeding for bankruptcy debtors. The trustee gave several reasons in support of his motion, including that there were concerns regarding the accuracy of Mr. Turner's schedules and that there were many potential undisclosed assets that required further investigation by a Chapter 7 trustee. On December 21, 2007, after a hearing, the bankruptcy court granted the motion, converted Mr. Turner's case to a Chapter 7 case, and appointed a Chapter 7 trustee.

[2] Specifically, Count 2 charged Mr. Turner with misrepresenting the amount of cash he had on hand, the current value of his bank accounts, and the value of negotiable interests he held. Count

on Count 3.

II

Mr. Turner appeals each of his convictions, arguing that there was insufficient evidence to convict him. Exercising plenary review and viewing the evidence in the light most favorable to the government, *see United States v. Moore*, 525 F.3d 1033, 1048–49 (11th Cir. 2008), we conclude that the evidence was sufficient to sustain the convictions on Counts 1, 2, 4, and 5. We came to a different conclusion on Count 6, however, and vacate that conviction. In light of the vacatur on Count 6, we remand to the district court for resentencing, and as a result, do not address the arguments Mr. Turner raises on appeal concerning his sentence.

A

Mr. Turner contends that no reasonable juror could conclude from the evidence at trial that he acted with the requisite intent. In order to establish guilt under § 152(1), the government must prove beyond a reasonable doubt that the defendant acted with the intent to defraud the bankruptcy court, the trustee, or his creditors. *See United States v. Dennis*, 206 F.3d 1295, 1300–01 (11th Cir. 2001). In comparison,

---

3, on which he was acquitted, charged Mr. Turner with failing to disclose all stock and other interests he had in businesses, partnerships, or joint ventures. Count 4 charged Mr. Turner with misrepresenting the value of interests in insurance proceeds he had. Count 5 accused Mr. Turner of falsely stating that he did not have a safety deposit box when in fact he had rented one on February 5, 2007. Finally, Count 6 charged him with failing to disclose the $11,500 mortgage payment to Commonwealth.

§ 1519 requires the government to prove that the defendant "knowingly" made a false entry on a document with the specific "intent to impede, obstruct, or influence the ... proper administration of any" case under title 11. *See United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008).

"A factual finding will be sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007) (quotations omitted). "Intent to defraud has often been defined as 'the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.'" *United States v. Peden*, 556 F.2d 278, 280 (5th Cir. 1977) (quoting *Beaudine v. United States*, 368 F.2d 417, 420 n.4 (5th Cir. 1966)). Intent to defraud may be proven through circumstantial evidence. *See United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir. 1990) ("The Government need not produce direct proof of scienter in a fraud case [and] circumstantial evidence of criminal intent can suffice."). Likewise, the government can establish the requisite "intent to impede, obstruct, or influence the ... proper administration" of a bankruptcy proceeding under § 1519 solely by circumstantial evidence. *See, e.g.*, *Hunt*, 526 F.3d at 744–745 (affirming conviction under § 1519 because a reasonable jury could infer

from circumstantial evidence introduced at trial that defendant intended to impede, obstruct, or influence an FBI investigation); *United States v. Wortman*, 488 F.3d 752, 754–755 (7th Cir. 2007) (same).

In this case, there was ample circumstantial evidence from which a reasonable jury could find that Mr. Turner acted with the requisite intent under § 152(1) and § 1519. First, Mr. Turner received the insurance proceeds shortly before he filed for bankruptcy, making it unlikely that he simply made a mistake in failing to list substantial accounts and assets. Second, Mr. Turner did not merely omit a single account or asset. He failed to list the insurance proceeds, the account for Redman Down South, and the safety deposit box, and he misstated the amount of the mortgage on the Bella Street property. A reasonable jury could find that Mr. Turner concealed this information so that the trustee would think that the Bella Street property was not worth pursuing or investigating. Third, there was evidence concerning the suspicious manner in which Mr. Turner negotiated, deposited, and withdrew the insurance proceeds. For example, Special Agent Christopher Graham of the Secret Service testified about the significance of the fact that Mr. Turner never withdrew more than $8,000 at one time. Agent Graham explained that federal law requires financial institutions to file a currency transaction report anytime an individual makes a withdrawal of $10,000 or more in cash. The purpose of the reporting requirement,

7

according to Agent Graham, is to "notif[y] the IRS of transactions exceeding $9,999 and also it can allude to large financial transactions of financial crimes." R70 at 92. A reasonable jury could conclude that, by making four separate withdrawals totaling $26,000 over the course of three days in amounts less than $10,000, Mr. Turner attempted to evade federal reporting requirements in order to make it less likely that the $28,500 in insurance proceeds would be discovered by the bankruptcy court or the trustee. Fourth, the government presented the testimony of Tawana Beard, the mother of Mr. Turner's daughter. Ms. Beard testified that in January of 2007, shortly before Mr. Turner filed for bankruptcy, she informed Mr. Turner that she and her daughter were going to move from Georgia to Alabama, where Mr. Turner resided. Ms. Beard told Mr. Turner that the reason for the move was so that he could establish a relationship with his daughter and so that Ms. Beard could "try to get him to pay his child support." R70 at 87. At that time, Mr. Turner owed Ms. Beard approximately $20,000 in back child support. A reasonable jury could find, based on this testimony, that Mr. Turner wanted to hide his assets and that he acted with the requisite intent to defraud and the requisite intent to impede and obstruct the administration of his bankruptcy case.

In sum, viewing the evidence as a whole, we conclude that there was sufficient evidence of intent as to Counts 1, 2, 4, and 5. The convictions on those charges are

8

therefore affirmed.

We come to a different conclusion on Count 6, which charged Mr. Turner with making a false entry on Question 3, Subsection B, of his Statement of Financial Affairs. That question required Mr. Turner to "[l]ist each payment or other transfer to any creditor made within *90 days immediately preceding the commencement of this case* if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000." (emphasis added). In response to the question, Mr. Turner represented that he had not made any such payment to a creditor prior to filing for bankruptcy.

The government alleged (and sought to prove) that Mr. Turner falsely answered Subsection B of Question 3 because he failed to disclose that he had paid $11,500 to Commonwealth to settle the mortgage on the Bella Street property. As the government essentially conceded at oral argument, however, there is no evidence in the trial record that Mr. Turner's answer was false.

A bankruptcy proceeding commences on the day that the bankruptcy debtor files his voluntary bankruptcy petition. *See* 11 U.S.C. § 301(a) ("A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.").

9

Mr. Turner filed his voluntary Chapter 13 bankruptcy petition on February 2, 2007, and therefore, his bankruptcy case "commenced" on that date. The evidence shows that Mr. Turner paid off the Bella Street property mortgage on February 5, 2007, three days *after* his case commenced. Because he paid off his mortgage after the commencement of his bankruptcy case, no reasonable jury could have convicted Mr. Turner of answering Question 3, Subsection B, untruthfully. Accordingly, we vacate Mr. Turner's conviction on Count 6 and remand to the district court for the entry of judgment of acquittal on that charge. *See United States v. Mount*, 161 F.3d 675, 678 (11th Cir. 1998) ("If the record does not contain sufficient evidence under which a properly instructed jury could have convicted [the defendant], then double jeopardy principles mandate that we vacate the conviction and remand to the district court with directions to enter a judgment of acquittal on the count in question.").

C

Mr. Turner also appeals his sentence, arguing that the district court incorrectly calculated the amount of loss under the Sentencing Guidelines. Specifically, Mr. Turner asserts that the district court erred when it included the $11,500 mortgage payment that he made to Commonwealth as part of the actual or intended loss calculation. Because we vacate Mr. Turner's conviction on Count 6, we remand to the district court for resentencing, and do not address this argument on appeal. *See, e.g.,*

10

*United States v. Lander*, 668 F.3d 1289, 1298 (11th Cir. 2012) (declining to address challenges to sentence because a number of convictions were vacated and case was remanded for resentencing); *United States v. Jones*, 601 F.3d 1247, 1253 n.1 (11th Cir. 2010) (same). We express no view on what effect, if any, the vacatur of the conviction on Count 6 has on the calculation of loss.

## III

Accordingly, we affirm Mr. Turner's convictions on Counts 1, 2, 4, and 5, vacate the conviction on Count 6, and remand for resentencing.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**