[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13749

_____

D.C. Docket No. 6:11-cr-00100-ACC-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL GRZYBOWICZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 4, 2014)

Before CARNES, Chief Judge, HULL and GARZA,[*] Circuit Judges.

CARNES, Chief Judge:

_____

[*] Honorable Emilio M. Garza, United States Circuit Judge for the Fifth Circuit, sitting by designation.

The facts that gave rise to this case could make any parent reluctant to let a friend look after her child, even for as little as five or ten minutes, and even in a public place.

I.

Michael Grzybowicz and Patricia Cochrum worked at the same restaurant. As friends, they planned a joint trip to an amusement park with their families to celebrate her birthday. The plan was that she would bring her boyfriend and two kids, while Grzybowicz would bring his wife and son. Grzybowicz may have known all along that his wife would not be coming because she did not like Cochrum, whom she suspected — without any basis so far as the record shows — of having an affair with her husband. In any event, after leading Cochrum to believe that his family would be with him, Grzybowicz showed up at the park by himself on February 17, 2011, claiming that his wife and son were both sick. Cochrum was there with her boyfriend and her two children, a five-year-old son and a two-year-old daughter. They entered the amusement park at 10:07 a.m.

After the group had been enjoying the amusements at the park for about four hours, Grzybowicz insisted that Cochrum ride a roller coaster with her boyfriend while he looked after her two children. She accepted what appeared to be a kind offer from her coworker and friend, entrusting her children to him in that public

2

place for a total of five to ten minutes. At the beginning of the roller coaster ride Cochrum could see Grzybowicz and her children, but she soon lost sight of them. From the evidence at trial, the best estimate is that Cochrum and her boyfriend got on the ride a short time before 2:08 p.m., and security camera recordings show that they got off of it at 2:14 p.m. They then rejoined Grzybowicz and the two children. The group left the park at 2:38 p.m., which was four-and-a-half hours after they had entered it.

On the car ride home from the amusement park, Cochrum's daughter complained that her genital area was hurting. Cochrum was not too alarmed because she assumed that the complaint was about a rash that the little girl had had for awhile. When they got home, Cochrum changed her daughter's diaper and noticed that its adhesive straps were not placed the same way that she had placed them earlier that day, which she would later realize was "a red flag." At the time, however, Cochrum dismissed it because her daughter occasionally played with her diaper straps. What had happened to the two-year old girl might have gone undetected but for events at the Grzybowicz house.

Two days after the trip to the amusement park, on the morning of February 19, 2011, Grzybowicz's wife, Bette Schuster, examined his cellphone. She noticed that he had received a text message from a sender she did not know. Schuster

3

regularly checked her husband's cellphone because, as we mentioned before, she suspected him of having an affair with Cochrum. Her suspicion was ironic because Schuster herself was having an affair with a police officer named Richard Bartholomay, who had slept at the Grzybowicz home the night before.

In any event, when she checked the outbox of Grzybowicz's phone that morning, Schuster saw four photographs that had been sent from his phone to an email address she did not recognize. The photographs depicted: (1) a man's hand opening the vagina of a small child wearing a yellow dress; (2) the man's finger inserted into the child's vagina; (3) the man's hand pulling back a diaper to reveal the child's vagina; and (4) the child's diaper and exposed vagina. Schuster immediately showed the photographs on the phone to Bartholomay and then called the police department.

When Officer Frank Gay arrived at the residence in response to the call, Schuster handed him her husband's cellphone and showed him the photographs. Officer Gay then awoke Grzybowicz, who was asleep in one of the bedrooms, and asked him to go to the police station and talk to an investigator. He agreed to do so. He also consented to a search of his home, his cellphone, and his laptop computer.

4

Grzybowicz's computer and cellphone, both of which were manufactured outside of the United States, were sent for forensic analysis by Agent Daniel Ogden. The examination showed that the computer contained two user profiles.[1] One of them, which was labeled "New," was password protected and had been created on February 11, 2011, less than a week before the trip to the amusement park. (Although Schuster shared the laptop with her husband, she did not know the password for his protected profile or even how a person could create a user profile.)

Agent Ogden gained access to Grzybowicz's password-protected user profile and used it to find 79 images of child pornography on the computer, including two of the four photographs of the little girl being exposed and molested that were also on Grzybowicz's cellphone.[2] Some of those 79 child pornography images on the user profile had been deleted, some were stored in temporary internet files, and some were saved in a file folder labeled "Pictures." The images

---

[1] A user profile is a prevalent software operating tool that allows a user to access a personal desktop set-up, folders, files, and software programs. When a user profile is password protected, its desktop set-up and files cannot be readily accessed by others who do not know the password.

[2] Agent Ogden accessed the password-protected profile using a "forensic tool kit," which is a type of software program that allows one to access the data on a computer without having to go through the password entry process.

5

stored in that folder included depictions of infants and young girls with their vaginas exposed.

The "New" user profile's internet history also contained links to Grzybowicz's Yahoo account, which is the email address to which the four graphic photographs of the little girl's vagina that were found on Grzybowicz's cellphone had been sent. That was the same email address his wife had seen but not recognized when she inspected the cell phone the morning of February 19, 2011. In addition, the "New" user profile also contained download information, including the file name, for at least one of the images sent from his cellphone to that email address. And it had several links to a file-sharing website for child pornography.

Analysis of Grzybowicz's cellphone revealed that the four photographs of a little girl's vagina that his wife had discovered on his cell phone were created between 2:08 and 2:12 p.m. on February 17, 2011, which was during the five to ten minutes that he had been alone with Cochrum's two-year-old daughter and five-year-old son.[3] Those four digital images had been sent from Grzybowicz's cell

---

[3] A park employee testified that, based on the number of guests at the amusement park on the day in question, it would have taken Cochrum about 2 minutes to go through the line for the ride, another 1 to 2 minutes to be seated on the ride, exactly 2 minutes and 36 seconds to ride the ride, and another 1 to 2 minutes to be unloaded from the ride. Using those estimates, a jury could reasonably infer that it would have taken Cochrum at least 6.5 minutes, and possibly longer, to take the ride. Knowing that Cochrum exited the ride at 2:14 p.m., a jury could also

6

phone to his Yahoo account, links to which had been found in the user profile that he kept password-protected and hidden from his wife.  They were sent from his cellphone to his Yahoo account that same day, around 2:45 p.m., which was seven minutes after he left the amusement park.

Cochrum later identified the dress visible in the four photographs on Grzybowicz's cell phone as the yellow and white-striped dress that her daughter was wearing when she had entrusted the little girl to Grzybowicz's care.   She gave the dress to the police.

## II.

Grzybowicz was indicted on charges of sexual exploitation of a minor to produce child pornography, in violation of 18 U.S.C. § 2251(a) (Count 1); distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 2); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 3).   During the four-day trial, the government called six witnesses, including Agent Ogden, Cochrum, and Grzybowicz's wife; it introduced

infer that she left her children with Grzybowicz at least 6.5 minutes before 2:14 p.m., or around 2:07:30, which is before he took the first picture at 2:08 p.m.

7

into evidence the four photographs that Grzybowicz's wife had found on his cell phone, several of the other pornographic images that had been found on his computer, and the yellow dress worn by Cochrum's daughter during the visit to the amusement park.   Based on that dress, Cochrum identified her daughter as the small child depicted in the explicit photographs that were on Grzybowicz's cellphone, two of which had been downloaded onto his computer.

The government also introduced a videotaped interview with Grzybowicz. At one point during that interview a detective had asked Grzybowicz:  "[W]hen you were accused of the first time of taking some inappropriate pictures, did you see the pictures that were taken?"  To avoid even the possibility of unfair prejudice from that statement, the Assistant United States Attorney prosecuting the case promised that the paralegal who would be operating the audio-video machinery during that part of the trial would stop the recording before the detective's reference to "the first time of taking some inappropriate pictures" and skip over that part.

That was an entirely reasonable way to handle the matter but, of course, Murphy's Law is antithetical to reasonable solutions.  When the recording was played for the jury the paralegal operator inadvertently failed to stop the recording when it should have been, a failure that resulted in the jury hearing the detective's

8

question.  Defense counsel objected and moved for a mistrial.  Outside the jury's presence, he asserted that the question impermissibly suggested that Grzybowicz had been accused of committing a similar offense in the past.  The AUSA confirmed that Grzybowicz had been accused of similar conduct in the past but argued that the detective's question did not clearly refer to any earlier allegations of child pornography and that a listener would not necessarily assume that it did.  Instead, she argued, the inference that the defense feared was itself questionable because the detective's question could just as easily be understood as referring to Officer Gay's questioning of Grzybowicz at his home on the morning of February 19th, which was about the photographs involved in this case.

The district court agreed with the government's position, found that the fact the jury had heard the questionable question would not prevent a fair trial, and denied the motion for a mistrial.  The district judge explained that when she had listened to the recording, she assumed that the detective's question did refer to the current charges against Grzybowicz and not to any earlier, unrelated allegations.  The AUSA suggested that the court instruct the jury that there was no evidence of any prior accusations against Grzybowicz, but defense counsel objected to that or any other curative instruction.  Believing that there was nothing to cure, the district court did not give a curative instruction.

9

The next day Grzybowicz filed a motion for reconsideration of the ruling denying a mistrial. He argued that the interpretation of the question proffered by the AUSA and accepted by the court was implausible because the recorded interview indicated that Grzybowicz had not been interviewed earlier about the amusement park pictures and he had said that he did not know why he was being interviewed. The court denied the motion for reconsideration, finding again that the detective's "vague reference" to Grzybowicz being "accused the first time" did not indicate that he had been accused of a similar crime before this one. The court also noted that Grzybowicz had declined a curative instruction, and it found that any possible prejudice created by the detective's question was "reduced" by the fact that the government had introduced, without objection, other images of child pornography stored on Grzybowicz's computer.

On the third day of the trial, at the close of Agent Ogden's direct testimony, he was asked: "Based upon your investigation of [Grzybowicz's cellphone and computer], and the other evidence that you were able to gather, were you able to determine who created the images that were on the phone that had been admitted into evidence?" Grzybowicz objected, asserting that the question was beyond the scope of Ogden's qualifications as an expert in computer forensics. He also argued that the question was for the jury to answer.

10

The court ruled that while the ultimate question of who produced the images was for the jury, Agent Ogden could give his opinion on that question based on his expertise. The court instructed the AUSA to rephrase the question to make it clear that the agent was being asked for his opinion. The rephrased question was: "As an expert in computer forensics, what is your opinion based upon the evidence that you have seen with regard to the review of the computer . . . as to who created the images of child pornography and ultimately had them on the computer?" Grzybowicz objected again on the same grounds, with the same result. Agent Ogden answered that, in his expert opinion, Grzybowicz had created the images and stored them on his computer.

After the government rested, Grzybowicz moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on all counts, which the district court denied. He then called a single witness in his defense, Bartholomay, who confirmed that at the time of the incident he had been, and he still was, having a romantic and sexual relationship with Grzybowicz's wife. Bartholomay also testified that he could not recall ever using Grzybowicz's computer and did not know about the password-protected profile on it. Grzybowicz chose not to testify in his own defense and, following the close of all evidence, he renewed his motion for a judgment of acquittal, which the district court again denied.

11

In its final charge, the district court instructed the jury on the essential elements of each of the charged counts, including the required nexus between the child pornography and interstate commerce and the definition of child pornography. The court told the jury that child pornography is the visual depiction of an actual minor engaged in "sexually explicit conduct," which includes "lascivious exhibition of the genitals or pubic area." The court defined "lascivious exhibition" as the "indecent exposure of the genitals or pubic area, usually to incite lust," and it instructed the jury on a number of factors that it could consider in making that determination. Specifically referring to Count 2 of the indictment, the court instructed the jury that to "distribute" child pornography "means to deliver or transfer possession of it to someone else, with or without any money involved in the transaction." Neither side objected to the court's instructions.

The jury found Grzybowicz guilty on all three counts. He filed a motion for a new trial under Federal Rule of Criminal Procedure 33(a), claiming that he had been prejudiced by the introduction of the part of the recorded interview containing the detective's reference to a prior accusation that Grzybowicz had taken "inappropriate pictures." He also argued that the government had failed to present any evidence that he distributed child pornography to another person or that the

12

child pornography had been transported in interstate or foreign commerce, as required to sustain his conviction on Count 2.

The district court denied the motion for new trial. It reasoned that the "brief publication" to the jury of the unredacted recording did not require a new trial because: (1) the detective's reference to Grzybowicz being "accused the first time" was vague and did not necessarily indicate that he had been accused of a similar crime in the past; (2) the government, without objection, had introduced other, unrelated images of child pornography that had been stored on Grzybowicz's computer, which reduced or eliminated the allegedly prejudicial effect from the question; and (3) in any event, the government had submitted "overwhelming evidence" that Grzybowicz had taken pornographic images of Cochrum's daughter and sent them to his personal computer.

The court also rejected Grzybowicz's challenge to his conviction on Count 2, which involved the distribution of child pornography. It agreed with the government that the term "distribute," as a matter of both its plain meaning and in light of "Congress' intent to eradicate the market for child pornography," means "to send," which Grzybowicz did when he transmitted images of child pornography from his cellphone to his computer. "By moving the image from his cellular phone to his computer," the court reasoned, Grzybowicz "perpetuated his

13

abuse of the victim and arguably took a step to make the image more accessible to others." Likewise, the court found that the government had satisfied the interstate commerce element of Count 2 because the evidence showed that Grzybowicz used a cellphone, which is an "instrumentality of interstate commerce," to send images of child pornography to his email account.

Grzybowicz's presentence investigation report (PSR) calculated a total offense level of 42, which included a two-level increase under U.S.S.G. § 2G2.1(b)(3) for distribution of child pornography.[4] When combined with a criminal history category of III, Grzybowicz's total offense level yielded a guidelines range of 360 months to life imprisonment. Grzybowicz objected to the § 2G2.1(b)(3) enhancement, arguing that sending images to himself did not constitute distribution within the meaning of the sentencing guidelines. The district court overruled the objection, finding that "under the circumstances of this case" it was "reasonably foreseeable that [Grzybowicz] was sending [the child pornography] to himself to distribute it even further." The court sentenced

---

[4] For purposes of calculating Grzybowicz's guidelines range, the PSR grouped together Counts 1 and 2, the production and distribution counts, because they involved the same victim and the same criminal objective. See U.S.S.G. § 3D1.2(b).

14

Grzybowicz to concurrent prison terms of 360 months on Count 1, 240 months on Count 2, and 120 months on Count 3.

III.

Grzybowicz challenges his convictions and sentence on three grounds, contending that:  (1) the evidence was insufficient to support any of his convictions for production, possession, and distribution of child pornography; (2) the district court abused its discretion in denying his post-verdict motion for a new trial; and (3) the district court erred in applying a two-level enhancement under § 2G2.1(b)(3) of the sentencing guidelines for distribution of child pornography.

We review de novo the sufficiency of the evidence to support a conviction, "viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict."  United States v. Boffil-Rivera, 607 F.3d 736, 740 (11th Cir. 2010) (quotation marks omitted).  A jury's verdict "cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013).

We review a district court's denial of a motion for a new trial only for abuse of discretion.  United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006).

15

"When employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  United States v. Whatley, 719 F.3d 1206, 1219 (11th Cir. 2013) (quotation marks and brackets omitted).

We review de novo a district court's interpretation and application of the sentencing guidelines, and review its factual findings only for clear error. Rodriguez, 732 F.3d at 1305.

## IV.

Grzybowicz challenges on sufficiency of the evidence grounds his convictions for producing and possessing child pornography as charged in Counts 1 and 3 of the indictment.  To establish his guilt under those two counts, the government was required to prove that:  (1) he knowingly produced and possessed (2) images of a minor (3) depicting that minor engaging in "sexually explicit conduct" (4) using a facility of interstate or foreign commerce.[5]  See 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B).  Grzybowicz contends that the evidence was insufficient to establish that the images found on his cellphone involved an actual

---

[5] A defendant's guilt can also be established under 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B) using other elements.  We simply focus on these four elements because they are sufficient to sustain Grzybowicz's convictions.

16

minor (element 2) or portrayed "sexually explicit conduct" (element 3) or that he used a facility of interstate or foreign commerce (element 4).

He is wrong. The evidence, when viewed in the light most favorable to the verdicts, was more than sufficient to allow a reasonable jury to find all four elements and convict Grzybowicz of producing and possessing child pornography. As to the age of the victim, the four photographs stored on Grzybowicz's cellphone clearly depicted a small diaper-clad child. Based on the yellow dress visible in the photographs, Cochrum identified the child, both in court and out of court, as her daughter who was two years old at the time the photographs were taken. The government presented the photographs and the yellow dress for the jury to compare. Forensic analysis of Grzybowicz's cellphone showed that the four photographs were taken between 2:08 and 2:12 p.m. on February 17, 2011, during the precise time frame in which Cochrum's children were entrusted to Grzybowicz at the amusement park while she and her boyfriend went on a roller coaster ride, which park cameras showed them exiting at 2:14 p.m.[6]

---

[6] That the government did not present evidence that Cochrum's daughter exhibited physical signs of vaginal penetration, as one of the photographs depicted, is not dispositive because the evidence it did present was sufficient to allow a reasonable jury to conclude that Cochrum's daughter was the victim of the charged offenses. See Rodriguez, 732 F.3d at 1303; cf. United States v. Kain, 589 F.3d 945, 950 (8th Cir. 2009) (holding that the government "is not

17

As to the requirement that the images depict "sexually explicit conduct," the parties agree that the only potentially applicable part of the statutory definition of that phrase is the one dealing with "lascivious exhibition of the genitals or pubic area."[7]  See 18 U.S.C. § 2256(2)(A)(v).  We have previously defined a "lascivious exhibition" as one that potentially "excit[es] sexual desires" or is "salacious." United States v. Williams, 444 F.3d 1286, 1299 (11th Cir. 2006), rev'd on other grounds, 553 U.S. 285, 128 S.Ct. 1830 (2008).  While the parties ask us to consider a non-exclusive list of six factors, known as the Dost factors, to define lasciviousness, this case does not require a multi-factor analysis.[8]  The evidence at

required to introduce evidence other than the images themselves to prove they depict real rather than computer-generated children").

[7] As for the other possible definitions of "sexually explicit conduct," the four photographs produced by Grzybowicz do not depict bestiality, masturbation, or sadistic or masochistic abuse. See 18 U.S.C. § 2256(2)(A).  Nor do they portray "sexual intercourse" within the meaning of federal law, which defines it as "genital-genital, oral-genital, anal-genital, or oral-anal" intercourse.  Id. § 2256(2)(A)(i).

[8] The "Dost factors" were first articulated in United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986).  A number of circuits have endorsed them as a helpful, though not comprehensive, means for determining whether images are "lascivious."  See, e.g., Shoemaker v. Taylor, 730 F.3d 778, 785 (9th Cir. 2013) (collecting cases).  The district court used them in this case because the Dost factors are the model for this circuit's pattern jury instructions.  See 11th Cir. Pattern Jury Instr. (Crim.) 82 (2010).  Deciding whether the Dost factors should be part of the law of our circuit is unnecessary in this case.

18

trial established that Grzybowicz reached under a little girl's dress, pulled aside her diaper, and took four pictures of her vagina. Her vagina was the focal point of all four pictures, and in two of them Grzybowicz spread and then digitally penetrated it. The photos are blatantly lascivious. Grzybowicz cannot and has not suggested any non-sexual purpose they might have served or how they might possibly be viewed as non-sexual. We need not complicate the matter with resort to a multi-factor analysis to conclude that any reasonable jury viewing these pictures not only could have but also would have found, as the jury in this case did, that they were a "lascivious exhibition of the genitals or pubic area." Indeed, it would have been unreasonable and utterly contrary to the evidence presented to have found otherwise.

About the interstate commerce element for Counts 1 and 3, Grzybowicz contends that the government failed to present sufficient evidence because the photographs "were made, transported, and possessed" in Florida. His contention is not aligned with the law. The interstate commerce element for each offense is satisfied by proof that the child pornography was transmitted using a facility of interstate or foreign commerce, including by computer, or was produced using materials that had been transported in interstate or foreign commerce. See 18 U.S.C. § 2251(a) (prohibiting the production of child pornography so long as it is

19

"produced or transmitted using materials that have been mailed, shipped, or transported in . . . interstate or foreign commerce by any means, including by computer," or had "actually been transported or transmitted using any means or facility of interstate or foreign commerce"); id. § 2252A(a)(5)(B) (prohibiting the possession of child pornography "that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce . . . or that was produced using materials that have been mailed, or shipped or transported in . . . interstate or foreign commerce by any means, including by computer"); see also United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("The internet is an instrumentality of interstate commerce.").

The evidence at trial showed that Grzybowicz's cellphone and laptop were both manufactured outside the United States, that he took the pornographic images of the victim on his foreign-made cellphone, that he then used the internet to send them to his email account, and that he downloaded at least two of the photographs onto his foreign-made computer. That is obviously enough to satisfy the interstate

20

commerce elements of §§ 2251(a) and 2252A(a)(5)(B). [9]  His convictions under

Counts 1 and 3 stand.

## V.

His conviction under Count 2 for distributing child pornography, in violation

of 18 U.S.C. § 2252A(a)(2), is another matter.  The difference between this count

and the other two is that distribution is an element of the § 2252A(a)(2) crime, and

there is no evidence that Grzybowicz sent the images of child pornography to

anyone other than himself.  As Grzybowicz argues, the government offered no

proof that he transferred the images to, or even made them available to, another

person.  Although links to a child pornography file-sharing website were found on

his computer, there is no evidence that the child pornography images on his

---

[9] Grzybowicz also contends that each of the statutes underlying his three convictions —
18 U.S.C. §§ 2251(a), 2252A(a)(2), and 2252A(a)(5)(B) — is unconstitutional under the
Commerce Clause, both on its face and as applied to the facts of his case.  He concedes,
however, that his constitutional challenges to those statutes are foreclosed by binding circuit
precedent.  See United States v. Smith, 459 F.3d 1276, 1284–86 (11th Cir. 2006) (upholding the
application of §§ 2251(a) and 2252A(a)(5)(B) to a defendant who had not distributed
pornographic images to other states, but who had used materials that had traveled in interstate
commerce); United States v. Maxwell, 446 F.3d 1210, 1218–19 (11th Cir. 2006) (upholding
§ 2252A as a valid exercise of Congress' authority to regulate interstate commerce, and
explaining that "it is within Congress's authority to regulate all intrastate possession of child
pornography, not just that which has traveled in interstate commerce or has been produced using
materials that have traveled in interstate commerce").

21

computer were stored in a shared folder accessible to others or were ever uploaded to any publicly accessible website.

We have not yet defined the term "distribute" for purposes of § 2252A(a)(2), and neither has Congress. We start here with its plain and ordinary meaning. See Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 2054 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); United States v. Silvestri, 409 F.3d 1311, 1333 (11th Cir. 2005) (explaining that when terms are not defined by statute, "[c]ourts must assume that Congress intended the ordinary meaning of the words it used") (quotation marks omitted). The word "distribute" ordinarily means to deliver, give out, dispense, or disperse to others. See United States v. Probel, 214 F.3d 1285, 1288 (11th Cir. 2000) (explaining, in the context of a guidelines enhancement for distributing child pornography, that "the term 'distribution' should be given its ordinary meaning of 'to dispense' or 'to give out or deliver'"); see also Black's Law Dictionary 508 (8th ed. 2004) (defining "distribute" as to "apportion," "deliver," or "disperse"); Random House Webster's Unabridged Dictionary 572 (2d ed. 2001) (defining "distribute" as to "deal out," "disperse," or "pass out or deliver . . . to intended recipients"); Webster's Third New International Dictionary 660 (1986) (defining "distribute" as to "divide among several or many,"

22

"dispense," or "apportion esp[ecially] to members of a group"). Implicit in the cited definitions is the notion that the item being distributed is delivered to someone other than the person who does the delivering. We do not commonly speak of delivering to ourselves things that we already have. Our pattern jury instructions make the point that: "To 'distribute' something means to deliver or transfer possession of it to <u>someone else</u> . . . ." 11th Cir. Pattern Jury Instr. (Crim.) 83.4A (emphasis added). That part of the pattern instructions was given to the jury in this case, without objection from either side.

In a related context, we have held that the distribution requirement for sentencing enhancements under U.S.S.G. § 2G2.2(b)(3) is satisfied where a defendant posts child pornography to a publicly accessible website or makes it accessible to others by storing it in a shared computer folder connected to a file-sharing network. See <u>United States v. Spriggs</u>, 666 F.3d 1284, 1287 (11th Cir. 2012) (concluding that the distribution element of § 2G2.2(b)(3)(B), which imposes a five-level enhancement for distributing child pornography "for the receipt, or expectation of receipt, of a thing of value," can be satisfied where a defendant posts "illicit images on a publicly accessible website" or "makes the files accessible to others" by "placing them in a file sharing folder"). Other circuits have reached similar conclusions with respect to the distribution element of

23

§ 2252A(a)(2), unanimously holding that a defendant "distributes" child pornography within the meaning of the statute when he either transfers it to another person or makes it accessible to others through a file-sharing website or peer-to-peer network.[10]

In United States v. Shaffer, for example, the Tenth Circuit held that a defendant who stored images and videos of child pornography in a shared computer folder accessible to other users of a peer-to-peer network had distributed those materials within the plain meaning of § 2252A(a)(2).  472 F.3d 1219, 1223–24 (10th Cir. 2007).  The Tenth Circuit reasoned that while the defendant "may not have actively pushed pornography" on the users of the peer-to-peer network, he "freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items."  Id. at 1223.  The court emphasized that the defendant "could have, but did not, save the illicit images and

---

[10] Peer-to-peer networks are one method of distributing files over the internet; other file-sharing methods include email and websites that allow users to download content from a central server.  See Kernal Records Oy v. Mosley, 694 F.3d 1294, 1305 (11th Cir. 2012).  The defining characteristic of peer-to-peer networks is that they allow users' computers to communicate directly with each other, instead of through a central server.  See United States v. Vadnais, 667 F.3d 1206, 1208 (11th Cir. 2012).  By installing specialized software on their computers, users can search for and retrieve files located in shared folders on the computers of other users.  See id. Individual users of peer-to-peer networks can remove downloaded files from their shared folders, thus making those specific files inaccessible to other network users, or can disable file sharing altogether.  See id. at 1208–09.

videos in a computer folder not susceptible to file sharing," and "could have, but did not, activate the feature on [the peer-to-peer software] that would have precluded others from taking materials from his shared folder." Id. at 1224. The First, Fifth, Eighth, and Ninth Circuits have adopted similar views. See United States v. Richardson, 713 F.3d 232, 236 (5th Cir. 2013) ("[W]e conclude that downloading images and videos containing child pornography from a peer-to-peer computer network and storing them in a shared folder accessible to other users on the network amounts to distribution under § 2252A(a)(2)(B) . . . ."); United States v. Chiaradio, 684 F.3d 265, 282 (1st Cir. 2012) ("When an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred."); United States v. Budziak, 697 F.3d 1105, 1109 (9th Cir. 2012) ("[W]e hold that the evidence is sufficient to support a conviction for distribution under [] § 2252(a)(2) when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it."); United States v. Collins, 642 F.3d 654, 655–57 (8th Cir. 2011) (holding that a defendant had distributed child pornography where he stored it "under his screen name on a [peer-to-peer] filing-sharing program"). That is all well and good, but this case is different.

25

The evidence presented at trial showed that Grzybowicz sent four images of child pornography from his cellphone to his personal email account and then downloaded at least two of those images onto his computer.  The evidence also showed that, counting those two images, he had a total of 79 images of child pornography on his computer, which were either deleted, stored in temporary internet files, or saved in a pictures folder, and that his internet history contained links to a child pornography file-sharing website.  But there is no evidence at all that Grzybowicz shared with others any of the illicit images found on his cellphone or computer or put them where they could be shared without any further action on his part.  There is no evidence that he uploaded images to the file-sharing website found in his internet history, or to any website for that matter, nor is there any evidence that the images stored on his computer were accessible to other users of the file-sharing website.  Speculation and conjecture is not enough.  See United States v. Mendez, 528 F.3d 811, 814 (11th Cir. 2008) ("When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction."); Shaffer, 472 F.3d at 1224 (suggesting that the distribution element of § 2252A(a)(2)(B) would not be met where a defendant "save[d] the illicit images and videos in a computer folder not susceptible to file sharing").  For all that we can tell from the record, the file-sharing website that

26

Grzybowicz frequented may not even have been linked to a peer-to-peer network, which would allow other users to directly access files saved in a shared folder on his computer. See Kernal Records Oy v. Mosley, 694 F.3d 1294, 1305 (11th Cir. 2012) (noting that peer-to-peer networks, unlike other methods of distributing files over the internet, allow users to directly access files stored on remote computers through the use of specialized software). And there is no evidence that any of the child pornography images were saved in a shared folder.

It is not enough that Grzybowicz sent the four pictures he took with his cell phone to his own email address. By doing that, he may have taken a step in the direction of distributing those images to others but the statute does not criminalize taking steps toward distribution or getting ready to distribute, it criminalizes distribution. See 18 U.S.C. § 2252A(a)(2) ("Any person who . . . knowingly . . . distributes . . . .").

Because it did not present any evidence that Grzybowicz transferred child pornography to others or "freely allowed them access to his computerized stash of images," see Shaffer, 472 F.3d at 1223, the government failed to establish "distribution" within the meaning of § 2252A(a)(2). For that reason, we vacate his conviction on Count 2. We also vacate his sentence on all counts and remand for resentencing. See United States v. Lander, 668 F.3d 1289, 1298 (11th Cir. 2012)

27

(vacating a defendant's "sentences on all counts" and remanding for resentencing after vacating some, but not all, of the defendant's convictions).

## VI.

That leaves standing Grzybowicz's conviction on Count 1 (production of child pornography) and Count 2 (possession of it). He contends that he is entitled to a new trial on those counts based on his assertions that: (1) the evidence heavily preponderated against each of his convictions; (2) the court erred in allowing Agent Ogden to offer his expert opinion on the "ultimate issue" about who had taken the pictures found on Grzybowicz's cellphone that had also been sent to, and downloaded onto, his computer; and (3) the court erred in failing to grant a mistrial after the jury was inadvertently allowed to hear the part of the recorded police interview where the detective asked Grzybowicz about the "first time" he was accused of taking "inappropriate pictures." He also contends that he is entitled to a new trial based on the cumulative prejudicial effect of those asserted errors.

A district court, upon the defendant's motion, "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for new trials based on the weight of the evidence "are not favored," and they may only be granted where the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."

28

United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993).  Grzybowicz's challenges to the weight of the evidence to support his convictions on Counts 1 and 3 merit little discussion.  As our earlier recounting of it shows, the evidence that he produced and possessed child pornography is overwhelming.[11]  Denying the motion for a new trial on that ground was not an abuse of discretion.

Nor was it an abuse of discretion for the district court to permit Agent Ogden, over Grzybowicz's objection, to give his expert opinion that Grzybowicz created the illicit images that were found on his cellphone and later downloaded them onto his computer.  Under Federal Rule of Evidence 704, "[a]n expert may testify as to his opinion on an ultimate issue of fact," provided that he does not "merely tell the jury what result to reach" or "testify to the legal implications of conduct."  Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990); see also Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").  Agent Ogden did not tell the jury what to decide or testify about the legal implications of Grzybowicz's conduct.  Instead, he gave his expert opinion, based on his examination of the cell phone and computer files,

---

[11] Grzybowicz also challenges the weight of the evidence that he distributed child pornography, as charged in Count 2, but our reversal of that conviction on sufficiency grounds moots that challenge.

29

all of which was admitted as evidence at trial, that Grzybowicz had taken the amusement park photos with his cellphone and later downloaded them onto his computer.  Agent Ogden readily admitted on cross-examination that he did not actually know who created those images, and the district court specifically instructed the jury that it was not required to accept Agent Ogden's expert opinion.

Finally, the district court did not abuse its discretion by not granting a mistrial based on the portion of the police interview that was inadvertently played for the jury after the government had agreed to redact it.  "Typically, a defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice," United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003), which occurs when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different, United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007).  We have recognized that a trial judge is often "in the best position to evaluate the prejudicial effect of a statement or evidence on the jury," and that the prejudicial effects of an improper statement may be reduced or eliminated where "the record contains sufficient independent evidence of guilt." Newsome, 475 F.3d at 1227 (quotation marks omitted).

In denying Grzybowicz's motions for a mistrial and for a new trial, the district court found that the jury, which was unaware of Grzybowicz's criminal

30

history, would not necessarily construe the question as referring to an earlier, unrelated allegation about child pornography, instead of as a reference to when he was first accused of having taken the images of the little girl at the amusement park that formed the basis for the charges on which he was being tried.  The court also found that any potential prejudice created by the detective's reference to Grzybowicz's being "accused the first time" was substantially reduced or entirely eliminated by the "overwhelming evidence" that he had taken the pornographic images in question, and by the government's introduction, without objection, of other illicit images found on Grzybowicz's computer that were unrelated to the amusement park incident.  We agree.  Because he was not substantially prejudiced by the brief and isolated reference to the "first time" he was accused of "taking some inappropriate pictures," he was not entitled to a mistrial.  See id.

Nor was there cumulative error warranting a new trial.  See United States v. Capers, 708 F.3d 1286, 1299 (11th Cir. 2009) (explaining that, under the cumulative error doctrine, a defendant must show that his substantial rights were affected by the aggregation of non-reversible errors); United States v. House, 684 F.3d 1173, 1210–11 (11th Cir. 2012) ("[W]here there is no error or only a single error, there can be no cumulative error.") (citation omitted).

VII.

31

Finally, Grzybowicz contends that the district court erred in applying a two-level guideline enhancement under § 2G2.1(b)(3) for distribution of child pornography.  We need not decide that issue, at least not at this juncture, because we have vacated Grzybowicz's conviction on Count 2, will vacate his sentence on all counts, and will remand for resentencing.  See Lander, 668 F.3d at 1298.

In remanding for resentencing, we note that the definition of "distribution" in § 2G2.1(b)(3) — which encompasses both distribution and "possession with intent to distribute" — is broader than the meaning of "distribute" in § 2252(a)(2).  See U.S.S.G. § 2G2.1 cmt. n.1 (broadly defining "distribution" to mean "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor").  That means our conclusion that the evidence was insufficient to support Grzybowicz's conviction for distribution under § 2252(a)(2) does not necessarily foreclose the application of the § 2G2.1(b)(3) enhancement in his sentencing.  Because the jury's verdict on Count 2 necessarily established distribution for purposes of the § 2G2.1(b)(3) enhancement, the parties had no reason to bring forward any additional information or evidence relating to that issue at the original sentence proceeding.  Now that the verdict on Count 2 has been set aside, the parties on remand should be given an opportunity to present

32

additional evidence or information relevant to the enhancement. After they have had that opportunity, the district court should enter findings about whether the government has proven by a preponderance of the evidence that Grzybowicz had the "intent to distribute" necessary to satisfy § 2G2.1(b)(3).

If the district court decides that the § 2G2.1(b)(3) enhancement does apply, it may wish to exercise its discretion to state whether it would have imposed the same sentence even without the enhancement. Doing so could moot for appellate purposes any issue regarding that enhancement, or conversely, could underscore its importance. See, e.g., United States v. Dean, 517 F.3d 1224, 1232 (11th Cir. 2008). As we have explained before, "pointless reversals and unnecessary do-overs of sentence proceedings can be avoided if district courts faced with disputed guidelines issues state that the guidelines advice that results from decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered. Likewise, if resolution of the guidelines issue does matter to the judge's ultimate sentencing decision, noting that it does will help focus our attention on the issues that matter." United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006) (quotation marks omitted). Of course, regardless of how the district court decides the enhancement issue, it is not required to say anything

33

about whether the resolution of the issue mattered to its ultimate sentencing decision.

## VIII.

We affirm Grzybowicz's convictions on Counts 1 and 3.  We vacate his conviction on Count 2, vacate his sentences on all counts, and remand to the district court for resentencing.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

34