[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13562
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00349-WKW-WC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN WAYNE TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 30, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Kevin Wayne Taylor appeals his 240-month sentence for his convictions on

one count of receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(A), and one

count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). In determining Taylor's sentencing range under the applicable guideline, U.S.S.G. § 2G2.2, the district court applied a cross-reference, § 2G2.2(c)(1), which states that "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct . . . , apply § 2G2.1," the guideline applicable to production offenses. The court applied § 2G2.2(c)(1)'s cross-reference to § 2G2.1 based on its finding that Taylor had caused a 10-year-old girl to engage in sexually explicit conduct for the purpose of taking photographs of that conduct. On appeal, Taylor argues that the district court erred in applying the cross-reference because the government failed to reliably prove that the photographs depicted sexually explicit conduct. He also contends that the 240-month sentence is substantively unreasonable. After careful review, we affirm.

## I.

On November 9, 2015, the parents of a 10-year-old girl reported to law enforcement that Taylor had inappropriately touched their daughter, a friend of Taylor's daughter, during a sleepover at Taylor's house on November 7. The victim was interviewed in the presence of law enforcement, including Alabama State Bureau of Investigation Special Agent Denise McCain, by a forensic interviewer from a children's advocacy organization.

2

During the interview, the victim said that Taylor invited her to lie down with him on a sofa. After she did so, he began rubbing her leg, stomach, chest, and vaginal area, and eventually inserted his finger into her vagina. Taylor then used his fingers to spread apart her vagina and began taking pictures of her vagina with his cell phone. The victim said she heard flashes from the cell-phone camera. The victim advised she also heard Taylor whisper, "Just one more," before taking the last picture. When he finished taking pictures, the victim felt Taylor's hand beating back and forth against her leg.

After the interview with the victim, law enforcement obtained and executed a search warrant at Taylor's home, seizing computers and cell phones—though not the cell phone used on the night of the sleepover. A forensic search of these items revealed over 1,000 images of child pornography.

McCain also interviewed Taylor. During the interview, Taylor admitted to reaching between the legs of the victim, but he claimed he was checking to see if she had wet herself and did not intentionally touch her vagina. When asked about his cell phone, Taylor denied taking any pictures on the night of the incident and claimed that he had lost his cell phone while hunting on Monday, November 9, 2015, the day after the victim's parents confronted him and said they were contacting the police. When McCain mentioned that they could use an application

to locate his cell phone in the woods, Taylor claimed that he had dropped his phone on a tree stump and broken it before losing it.

Taylor was indicted for receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).   Taylor pled guilty to both counts without a plea agreement.

Taylor's initial presentence investigation report ("PSR") recommended a base offense level of 22, under U.S.S.G. § 2G2.2(a), along with several enhancements and a reduction for acceptance of responsibility.  The total offense level of 32, combined with a criminal-history category of I, yielded a guideline range of 121 to 151 months of imprisonment.  The initial PSR noted his "sexual abuse of a ten year old female" but did not otherwise address that conduct.

The government objected that Taylor's conduct involving the victim should have been included as relevant "offense conduct," and it later argued that, based on this conduct, the district court should apply § 2G2.2(c)(1)'s cross-reference to § 2G2.1.  Because the government raised the cross-reference issue the day before the sentencing hearing, the district court continued the hearing to allow the parties to brief the issue and to obtain a revised PSR.

The revised PSR re-calculated the guideline range using § 2G2.2(c)(1)'s cross-reference to § 2G2.1, finding that Taylor caused the 10-year-old victim to

engage in sexually explicit conduct—lascivious exhibition of the genitals or pubic area—for the purpose of producing a visual depiction of such conduct. Applying § 2G2.1, the revised PSR recommended a base offense level of 32, a total offense level of 41, and a resulting revised guideline range of 324 to 405 months of imprisonment. Taylor objected to the application of the cross-reference and argued that a sentence of 60 months—the mandatory minimum—was appropriate.

When Taylor's sentencing hearing resumed, the government offered the testimony of Special Agent McCain, who investigated Taylor and was a witness to the forensic interview with the victim. McCain recounted most of the facts described above. On cross-examination, McCain acknowledged that she did not know precisely what was depicted in the photos Taylor took with his cell phone, given that they never recovered the phone. The government also played for the court a recording of the victim's interview.

Taylor argued that the cross-reference should not apply because, without access to or a description of the photos he allegedly took, the government could not prove that the pictures depicted the victim's genitals in a lascivious way. The government responded that the district court could apply the cross-reference based on the victim's detailed and credible statements.

The district court overruled Taylor's objections and applied § 2G2.2(c)(1)'s cross-reference to § 2G2.1 based on its finding that Taylor caused the victim to

5

engage in the lascivious exhibition of the genitals when he "used his fingers to spread apart the victim's genitalia" and took pictures.

The court explained that no pictures had to be produced because the cross-reference focused on "the intent of the producer" and "whether the conduct was done for the purpose of producing child pornography." The court also noted that Taylor's conduct was virtually identical to conduct found to be lascivious by this Court in *United States v. Grzybowicz*, 747 F.3d 1296, 1305–06 (11th Cir. 2014). Applying § 2G2.1, the district court calculated Taylor's guideline range to be 324 to 405 months.

Despite the significantly higher guideline range, Taylor still requested a sentence of 60 months. In support of that request, he cited his honorable military service in Iraq as a combat medic, the traumatic events he experienced there and the resulting diagnosis of post-traumatic stress disorder ("PTSD"), his lack of involvement with child pornography before deploying to Iraq, and his lack of criminal history. He also argued that application of the production guideline, § 2G2.1, yielded an excessive and unreasonable guideline range because he did not produce child pornography commercially. The government asked for a guideline sentence of 324 months, noting the seriousness of his conduct and the lack of evidence linking his PTSD to his offense conduct.

The district court ultimately sentenced Taylor to concurrent terms of 240 months of imprisonment.  In explaining its sentence, the court began by noting that Taylor's conduct in downloading and viewing images of child pornography did long-lasting harm and perpetuated a market for child pornography on the internet.  Turning to the "more serious," "hands-on" conduct involving the 10-year-old victim, the court stated that the victim would suffer from the memories of being abused for the rest of her life and that Taylor "bring[s] storms into the lives of other people with this kind of conduct."  Beyond the seriousness of the conduct, the court stated that it had taken into account the need to avoid sentencing disparities, Taylor's lack of criminal history, and other aspects of his characteristics and background, including his age, military service, and PTSD.  As for the PTSD, the court said it wasn't "quite sure how the PTSD ties into this" because it didn't "hear any kind of a causal connection to what happened here other than just very general."  The court found a total sentence of 240 months to be "reasonable and adequate" and not greater than necessary to comply with the statutory purposes of sentencing.  Taylor now appeals.

## II.

Taylor first challenges the district court's application of § 2G2.2(c)(1)'s cross-reference to § 2G2.1.  When considering the district court's resolution of guideline issues, we review legal issues *de novo*, factual findings for clear error,

and the court's application of the sentencing guidelines to the facts with "due deference."  18 U.S.C. § 3742(e); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Williams*, 340 F.3d 1231, 1238–39 (11th Cir. 2003) (holding that the deference that is due depends on the nature of the question presented).  The government bears the burden of proving the application of an enhancement with "reliable and specific evidence."  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

Taylor was convicted of violating § 2252A(a), for which the appropriate guideline is § 2G2.2.  Section 2G2.2, in turn, directs a district court to cross-reference § 2G2.1 "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  U.S.S.G. § 2G2.2(c).  The government must prove by a preponderance of the evidence the factors that trigger the cross-reference in § 2G2.2(c).  *See United States v. Whitesell*, 314 F.3d 1251, 1255 (11th Cir. 2002).  According to the commentary to § 2G2.2, "[t]he cross reference in subsection (c)(1) is to be construed broadly."  U.S.S.G. § 2G2.2, cmt. n.7(A).

Taylor's arguments on appeal focus on the element of "sexually explicit conduct."  The commentary to § 2G2.2 states that "sexually explicit conduct" has the meaning given that term in 18 U.S.C. § 2256(2).  U.S.S.G. § 2G2.2, cmt. n.7(B).  Section 2256(2) defines "sexually explicit conduct," in relevant part, as the

8

actual or simulated "lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).

We have defined a "lascivious exhibition" as one that potentially excites sexual desires or is salacious.  *Grzybowicz*, 747 F.3d at 1305–06.  As that definition suggests, what constitutes a "lascivious exhibition" is not concrete, so courts ordinarily evaluate "the actual depictions themselves" to distinguish between a forbidden image and, for example, "an innocuous photograph of a naked child."  *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2009), *rev'd on other grounds*, 553 U.S. 285 (2008).  Further, we have held that, in determining whether an image constitutes a lascivious exhibition, we look "to the intent of the producer or editor of an image."  *United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016).  Therefore, "depictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction."  *Id.*

Taylor's central claim is that without evidence of the content of the photos he allegedly took with his cell-phone camera—that is, the "actual depictions themselves" or some description of them—the government cannot meet its burden of proof for § 2G2.2(c)(1)'s cross-reference.  We disagree.

When interpreting a guideline provision, we begin with the language of the guideline, applying "the traditional rules of statutory construction."  *See United*

9

*States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011) (quotation marks omitted). We give the language of a guideline provision, like the language of a statute, its plain and ordinary meaning because "we presume that the Sentencing Commission said what it meant and meant what it said." *Id.* (quotation marks omitted).

By its plain terms, § 2G2.2(c)(1)'s cross-reference does not require the government to prove that Taylor actually produced a visual depiction of the minor's sexually explicit conduct. Rather, the cross-reference applies if Taylor "caus[ed] . . . a minor to engage in sexually explicit conduct *for the purpose of producing a visual depiction of such conduct.*" U.S.S.G. § 2G2.2(c)(1) (emphasis added). So long as the evidence shows that (1) he caused the minor to engage in the "lascivious exhibition of the genitals or pubic area" and (2) he did so "for the purpose of producing a visual depiction of such conduct," the government has met its burden. The cross-reference does not require the government to prove that he actually produced a visual depiction of the sexually explicit conduct. Therefore, the fact that the government did not produce the actual images themselves does not alone preclude the application of § 2G2.2(c)(1)'s cross-reference.[1]

---

[1] Our decisions in *Holmes* and *Grzybowicz* are not to the contrary. To be sure, in both cases the court focused on the actual depictions themselves in evaluating lasciviousness. *See Holmes*, 814 F.3d at 1251–52; *Grzybowicz*, 747 F.3d at 1305–06. But neither case held that evidence of the actual depictions is the exclusive way to prove that a minor engaged in sexually explicit conduct. That issue was not before us in either case. Nor was § 2G2.2(c)(1)'s cross-reference, the plain language of which does not require the government to prove that Taylor actually produced a depiction of the minor's sexually explicit conduct. *Cf. United States v. Buculei*, 262 F.3d 322, 328 (4th Cir. 2001) (holding that no proof of an actual depiction of

And based on the evidence that the government did present, the district court properly applied § 2G2.2(c)(1)'s cross-reference to § 2G2.1.  The government's evidence showed that Taylor exposed the victim's vagina, took several pictures of her vagina while spreading it with his fingers, and then masturbated against her leg.  As the district court noted, Taylor's conduct was very similar to the defendant's conduct in *Grzybowicz*.  In that case, "Grzybowicz reached under a little girl's dress, pulled aside her diaper, and took four pictures of her vagina.  Her vagina was the focal point of all four pictures, and in two of them Grzybowicz spread and then digitally penetrated it."  *Grzybowicz*, 747 F.3d at 1306.  We said these pictures were "blatantly lascivious."  *Id*.

Here, the conduct Taylor caused the minor victim to engage in was no less "blatantly lascivious."  While no pictures were introduced—potentially having been deleted or destroyed by Taylor after the victim's parents confronted him— whether Taylor successfully photographed this lascivious display is not important.  The evidence shows that he caused the victim to engage in the lascivious exhibition of her genitals "for the purpose of producing a visual depiction" thereof.  *See* U.S.S.G. § 2G2.2(c)(1); *cf. Holmes*, 814 F.3d at 1252 (holding that we look "to the intent of the producer or editor of an image" when determining lasciviousness).

---

sexually explicit conduct was required to support a conviction under 18 U.S.C. § 2251(a) because the crime "was complete when Buculei induced [the minor] into sexually explicit conduct for the purpose of producing a visual depiction thereof").

11

Thus, the government met its burden, and the district court did not err in applying § 2G2.2(c)(1)'s cross-reference to § 2G2.1.

## III.

Taylor next argues that his sentence is substantively unreasonable. He contends that the district court abused its discretion by focusing almost exclusively on the seriousness of his conduct and by failing to afford proper consideration to other mitigating factors that were due significant weight, including his prior military and public service, the trauma he endured as a combat medic, and the low likelihood he would recidivate. He says that a sentence of 60 months was sufficient under the circumstances.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018). When reviewing a sentence for reasonableness, we evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing under 18 U.S.C. § 3553(a) in light of the totality of the facts and circumstances. *United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the

12

public from the defendant's future criminal conduct.  18 U.S.C. § 3553(a)(2); *see*

*United States. v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (*en banc*).  The court

must also consider the nature and circumstances of the offense and the history and

characteristics of the defendant.  18 U.S.C. § 3553(a)(1).

The district court must consider all of these factors but it may, in its

discretion, give greater weight to some factors over others.  *United States v.*

*Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).  The discretion the court

enjoys is "substantial," *id.* at 1255, and the "court may (and should) consider

individualized, particularized, specific facts and not merely the guidelines label

that can be put on the facts," *id.* at 1260.

The district court's discretion is not unfettered, however.  A court abuses its

discretion if it "(1) fails to afford consideration to relevant factors that were due

significant weight, (2) gives significant weight to an improper or irrelevant factor,

or (3) commits a clear error of judgment in considering the proper factors."  *Id.* at

1256.  A court's unjustified reliance on any one § 3553(a) factor may be indicative

of a substantively unreasonable sentence, *United States v. Crisp*, 454 F.3d 1285,

1292 (11th Cir. 2006), but not necessarily so, *Kuhlman*, 711 F.3d at 1327

("[S]ignificant reliance on a single factor does not necessarily render a sentence

unreasonable.")  The party challenging the sentence bears the burden of showing

that the sentence "is unreasonable in light of the entire record, the § 3553(a)

13

factors, and the substantial deference afforded sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256. Ordinarily, that means convincing us that the sentence lies outside the range of reasonable sentences dictated by the facts of the case. *Irey*, 612 F.3d at 1190.

Here, Taylor's 240-month sentence is substantively reasonable. The record belies Taylor's claim that the district court unreasonably balanced the § 3553(a) factors or unjustifiably relied on a single factor to the exclusion of all others. After properly calculating the guideline range, the district court considered Taylor's arguments in mitigation and then expressly referenced several § 3553(a) factors, including the seriousness of the offense, particularly the "hands-on" nature of Taylor's conduct, the need to avoid sentencing disparities, Taylor's lack of criminal history, and other aspects of his background and characteristics, such as his age, military service, and PTSD. Then, in light of all of these factors, the court granted Taylor a significant downward variance from the guideline range. The weight to be given these factors, whether great or slight, was within the district court's discretion, and "we will not reweigh the factors." *United States v. Johnson*, 803 F.3d 610, 620 (11th Cir. 2015).

In addition, the district court's significant reliance on the seriousness of the offense conduct does not render the sentence unreasonable. *See Kuhlman*, 711 F.3d at 1327. Not only did Taylor possess and view a substantial amount of child

14

pornography, but also he sexually abused the 10-year-old daughter of close family friends. As the district court noted, the former conduct perpetuates a market for child pornography on the internet and continues the victimization of the minors involved, *see United States v. Pugh*, 515 F.3d 1179, 1195–97 (11th Cir. 2008), while the latter conduct leaves indelible memories from which the victim will likely continue to suffer throughout her life, *see United States v. Mozie*, 752 F.3d 1271, 1289 (11th Cir. 2014) ("Sexual crimes against minors cause substantial and long-lasting harm . . . ."), and causes collateral damage to family and friends. This is extremely serious conduct deserving of a substantial sentence. *See United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) ("Child sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable.").

In sum, the district court did not abuse its discretion by ignoring factors due significant weight, giving undue weight to improper or irrelevant factors, or committing a clear error of judgment in weighing the proper factors. *See Irey*, 612 F.3d at 1189. In light of the entire record and the § 3553(a) factors, the court reasonably concluded that a total sentence of 240 months, well below the guideline range of 324–405 months, was sufficient but not greater than necessary to serve the purposes of sentencing. *See id.* at 1187; *Rosales–Bruno*, 789 F.3d at 1254–55. We therefore affirm Taylor's sentence.

**AFFIRMED.**