[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14355
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00089-MCR-1


UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

GREGORY WILLIAMS,

Defendant–Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 8, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Gregory Williams appeals his convictions and 78-month sentence.  A 19-count superseding indictment charged Williams with the following: nine counts of unlawful possession or transfer of a machinegun, 18 U.S.C. §§ 922(o), 924(a)(2); nine counts of possession of an unregistered machinegun, 26 U.S.C. §§ 5861(d), 5871; and one count of making a false statement to a firearm dealer in connection with the purchase of a firearm, 18 U.S.C. §§ 922(a)(6), 924(a)(2).  On appeal, Williams argues that the district court erred in denying his motion for a judgment of acquittal, in denying his motion for a mistrial, and in imposing his 78-month sentence.  We affirm.

## I.  MOTION FOR JUDGMENT OF ACQUITTAL

Williams argues that the district court erred in denying his motion for a judgment of acquittal.[1]  The actions that led to Williams's indictment were his

---

[1] A defendant moves for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  But in his brief, Williams also suggests that the district court could have granted a new trial under Rule 33(a).  Rule 33(a) provides, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Williams admits that he did not make such a motion.  It was not error for the district court not to grant a motion that Williams did not make.

Further, Williams seems to argue in passing that the jury charge defining "knowingly" was improper.  We find that this argument has not been "plainly and prominently" raised and therefore deem it abandoned.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

Finally, Williams fails to raise any argument regarding his conviction for making a false statement to a firearms dealer.  If he has tried to make such an argument, we find the argument has not been "plainly and prominently" raised.  *See id.*

sales of auto sears, a part designed to convert semi-automatic firearms into automatic weapons. Williams testified at trial that he was unaware of the purpose of auto sears. Based on this testimony, he asserts that no reasonable jury could have found that he "knowingly" transferred or possessed machineguns or possessed an unregistered machinegun.

Although Williams moved for a judgment of acquittal at the close of the government's case, he failed to renew that motion at the close of evidence. Ordinarily, we review *de novo* whether there is sufficient evidence to support a conviction, asking "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (quoting *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008)). However, when a defendant presents his case after the denial of a motion for acquittal but fails to renew that motion after the close of evidence, "we review the defendant's challenge to the sufficiency of the evidence for a manifest miscarriage of justice." *See id.* The parties dispute which standard of review governs, but we need not resolve the dispute. Williams's argument fails even under *de novo* review.

"With limited exceptions, 18 U.S.C. § 922(o) makes it unlawful for an individual to possess a machinegun." *United States v. Rogers*, 94 F.3d 1519, 1523 (11th Cir. 1996). To prove a violation of 18 U.S.C. § 922(o), the government must

3

show that the defendant knew that the firearm in question was a machinegun.  *Cf.*

*id.* (holding that the government failed to demonstrate that the defendant knew the

weapon "had been altered to operate as a fully automatic weapon").  An auto sear

is itself a machinegun under the relevant statute, the National Firearms Act

("NFA"), which defines a machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily
> restored to shoot, automatically more than one shot, without manual
> reloading, by a single function of the trigger.  *The term shall also
> include the frame or receiver of any such weapon, any part designed
> and intended solely and exclusively, or combination of parts designed
> and intended, for use in converting a weapon into a machinegun*, and
> any combination of parts from which a machinegun can be assembled
> if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added); 18 U.S.C. § 921(a)(23) ("The term

'machinegun' has the meaning given such term in . . . 26 U.S.C. § 5845(b).").

Here, then, for the counts of unlawful possession or transfer of a machinegun, the

government needed to prove that Williams (1) possessed or transferred an auto sear

and (2) was aware that the auto sears constituted machineguns.

The NFA also requires a limited subset of firearms to be registered in the

National Firearms Registration and Transfer Record ("NFRTR").  *See* 26 U.S.C.

§ 5861(a)–(b).  The NFA defines the term "firearm" such that it encompasses only

certain types of firearms.[2]  In this opinion, we use the term firearm as the statute

---

[2] The statute defines firearm as follows:
The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18
inches in length; (2) a weapon made from a shotgun if such weapon as modified

4

defines it. In that light, it is unlawful for any person to receive or possess "firearms" that are not registered to him in the NFRTR. *Id.* § 5861(d). To obtain a conviction under § 5861(d), "the government need not prove that the defendant knew that the 'firearm' was not registered, but must prove beyond a reasonable doubt that the defendant knew of the features of the 'firearm' that brought it within the scope of the" NFA. *United States v. Moore*, 253 F.3d 607, 609 (11th Cir. 2001). A machinegun is a firearm within the scope of the NFA. *See* 26 U.S.C. § 5845(a)(6), (b). As explained, so is an auto sear: "The term 'machinegun' . . . shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." *Id.* § 5845(b). Accordingly, for the counts of possession of an unregistered machinegun, the government needed to prove that Williams (1) possessed an auto sear that should have been but was not registered to him in

---

has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

28 U.S.C. § 5845.

the NFRTR and (2) was aware that auto sears made the weapons into which they were installed fire automatically, converting them into machineguns.

For both machinegun-possession crimes, Williams contests only the knowledge element, asserting that he was unaware of an auto sear's purpose.

As a threshold matter, Williams's testimony that he was ignorant of the purpose of auto sears does him no favors. The jury was entitled to disbelieve his statements regarding auto sears and to consider those statements as substantive evidence of his guilt. *See United States v. Hough*, 803 F.3d 1181, 1188 (11th Cir. 2015) ("Having seen and heard her testimony, the jury was free to discredit her explanation, to infer that the opposite of what she said was true, and to consider that inference as substantive evidence of her guilt.").

Of course, the jury disbelieving Williams's testimony alone would not be enough to support his convictions. The government still has the "fundamental obligation to establish guilt in its case-in-chief," even when a defendant chooses to testify. *United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002). And the government met its fundamental obligation here. Evidence adduced at trial included, but was not limited to, the following: (1) Williams's text message to an undercover Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agent buyer with a photo that stated auto sears allowed a Glock to be fired at "full-auto"; (2) the ATF agent's testimony that Williams said of the auto sears, "These mothers

6

are legit, though.  I tried one."; (3) Williams's post-arrest admission to the ATF that he knew he was selling items that could change a firearm from semiautomatic to fully automatic.  Moreover, although Williams testified that he thought an auto sear was just "a piece of metal," he also stated that he thought it was legal to have an auto sear "until you attach it to the actual machine -- make it a machine gun."  Finally, the auto sears were not registered to Williams in the NFRTR.

In sum, there was sufficient evidence for the jury to convict Williams.  We affirm the district court's denial of Williams's motion for a judgment of acquittal.

## II.  IMPROPER QUESTIONING AND MOTION FOR MISTRIAL

Williams also argues that the district court erred in denying his motion for a mistrial.  Williams moved for a mistrial after the government asked, while questioning an ATF expert, an inappropriate question about how quickly a magazine could be emptied into the jury box.

During the trial, the following exchange occurred:

[GOVERNMENT:] Well, let me -- just for example, let me show you an item that's been admitted into evidence as Government's Exhibit 14F2.  There's two magazines here.  One magazine holds how many bullets?
[ATF EXPERT:] This is a 13-round magazine.
[GOVERNMENT:] And how many is this?
[ATF EXPERT:] This is a 27-round magazine.
[GOVERNMENT:] 27-round magazine?
[ATF EXPERT:] Yes.
[GOVERNMENT:] Can go into a Glock pistol?
[ATF EXPERT:] Yes, sir.  They actually have bigger magazines than this.

7

[GOVERNMENT:] Well, God forbid, if I want to use this Glock pistol in the courtroom here this morning, how quickly can I expend 27 rounds into the jury box?  How long is it going to take? (*Demonstrating*).
[ATF EXPERT:] It would take approximately two seconds to --
        DEFENDANT WILLIAMS:[3] I object.
        THE COURT: Excuse me?
        DEFENDANT WILLIAMS: I object.
        THE COURT: Overruled.
[ATF EXPERT:] It would take approximately two seconds to fire 27 rounds at the cyclic rate of 1100 to 1200 rounds per second [*sic*].
[GOVERNMENT:] So I could empty this into the jury box before [the court security officer] has a chance to get out of his chair?
        DEFENDANT WILLIAMS: I object.
        THE COURT: Sustained.
        DEFENDANT WILLIAMS: Judge, I would like to move for a mistrial.
        THE COURT: No, sir, denied.

After a recess that immediately followed and in front of the jury, Williams

again addressed the court:

THE COURT: . . . Mr. Williams?
DEFENDANT WILLIAMS: I need to address the Court.  I asked the Court to strike the last question by the Government about shooting to the jury box.  It was [*sic*] impermissible Golden Rule violation.
THE COURT: I sustained your objection.  And the jury should disregard the question.  It's not evidence, you know that, I've told you that, but you should disregard it.
DEFENDANT WILLIAMS: I renew my request for a mistrial.
THE COURT: Your request is denied.

Later, with the jury excused, Williams moved for a judgment of acquittal.  In

discussing the motion, Williams renewed his request for a new trial:

---

[3] Williams represented himself at trial.  He is counseled on appeal.

8

DEFENDANT WILLIAMS: I say, even though it's a violation of the Golden Rule to create scare [*sic*] and fear inside the jury?

THE COURT: I didn't take the statement as creating fear to the jury.

DEFENDANT WILLIAMS: What part, ma'am?  He said he'll unload a whole clip inside the whole jury box.

THE COURT: Well, I didn't perceive it that way, and I don't think it supports a mistrial.  I've told the jury to disregard the statement, and I've told them that nothing the lawyers say at any time is evidence in the case.

DEFENDANT WILLIAMS: Did you see the look on their --

THE COURT: And I don't think that --

DEFENDANT WILLIAMS: Did you get to look and see the look on their faces?

THE COURT: I looked at all of them, and I didn't see anything alarming.  They've heard a lot of information over the past two days about firearms and including machine guns and how fast they fire and how rapidly they fire.

The next day, the district court addressed the parties before it brought the

jury back in:

THE COURT: Good morning.  I would like to start off by returning to yesterday afternoon . . . .

So, I understand the Government's sort of stated need to explain to the jury the extremely dangerous nature of an auto sear and how much damage it can inflict and how quickly it can inflict such serious damage.  That's understandable particularly given Mr. Williams [*sic*] repeated insinuations in his questioning of witnesses about sort of the insignificance of the device and that it's nothing more than an insignificant piece of metal.

But with that said, the example of the jury box and unloading a magazine into the jury box, that was clearly improper.  I looked back at the real time transcript after trial yesterday, and there were two references one after the other.

. . .

[I]n looking back through this real time, I'm going to have to assume that, as to the first question, I did not hear the reference to the jury box or it didn't impress upon me.  I heard the reference to the courtroom.  And although even that was borderline problematic, I allowed it in, I

9

overruled the objection because of what I just started out by saying, and that is I understand the Government's need to explain how dangerous the auto sear is to the jury in light of the suggestions by Mr. Williams that it is an insignificant piece of metal.

If I had heard the reference to the jury box in the first question, I would have sustained that objection, just as I did to the second. But because I overruled the objection, the testimony came in about it taking two seconds.

So I feel that this morning I need to make it clear to the jury that the entire line of questioning . . . regarding the firing of the automatic weapon is excluded. Because yesterday I excluded your question but I didn't exclude [the witness's] testimony. And so I'm going to do that, I'm going to explain to the jury that it's all excluded.

But the Motion for Mistrial remains denied. I've given this a lot of thought. And anyone age 8 to 80 who watches television or has been to the movies knows what an automatic weapon is capable of doing. And I don't think that the questions, albeit improper, I don't believe that they created shock or outrage in this jury sufficient to prejudicially affect Mr. Williams's substantial rights, particularly in light of the evidence the jury has heard in the case.

So, like I said, I'm going to instruct the jury that the reference to the jury box was improper and that they should disregard that line of questioning and the response of the agent.

DEFENDANT WILLIAMS: May I add something, ma'am?

THE COURT: Go ahead.

DEFENDANT WILLIAMS: [The prosecutor], he stood in front of the jury with the gun pointed at them, ma'am, and made a reference, you know, and pointed at the bottom, you know, at the wood and was facing their face, you know, just very distinctly. And dangerousness is not an element of the accusations --

THE COURT: But, Mr. Williams, you've made -- I might agree with you more if you hadn't made such a big deal in your questioning about the insignificance of an auto sear. Your cross-examination of the witnesses every time I believe you referenced how insignificant -- it's just a little piece of black metal. And so the Government absolutely has the need to explain to the jury why these little pieces of black metal are so important in this case, in this prosecution.

DEFENDANT WILLIAMS: Well, I feel like it's an unfair trial.

10

THE COURT: Well, I understand that, and you've made your record, you've objected, you've asked for a mistrial, I've denied it.  I've just placed on the record some --
DEFENDANT WILLIAMS: I understand.
THE COURT: -- more sort of rationale for my decision.  And then I am going to instruct the jury -- I'm going to make sure and be ever cautious that they know they cannot consider any of those statements or any of that line of questioning, and I'm even going to tell the jury that the reference to the jury box was improper.  But I'm not going to grant your Motion for Mistrial.

True to its word, the district court spoke directly to the jury as it came in for

the day:

THE COURT: I'd like to, before we get started, give you an instruction.  It's a bit of a repeat from an instruction that I gave you yesterday, but I just want to make sure that you're all very clear on the instruction, and it relates to some testimony yesterday afternoon just before we recessed for the day.
If you recall, . . . the firearms expert from the ATF[] was on the stand. He and [the prosecutor] had an exchange about the rapid firing capabilities with an auto sear in place, and there were a couple of references to the jury box.  And I believe I gave you an instruction yesterday that you should disregard the comments in that regard that were made by [the prosecutor].
Those references in regards to the jury box in terms of an explanation about how rapidly a weapon with an auto sear attached can fire was [*sic*] not proper, and therefore I am instructing you that you should disregard not only [the prosecutor's] comments in that regard but also [the expert's] responses or his testimony in response to those questions.

Having laid out the relevant trial events, we review for abuse of discretion

the district court's denial of a motion for a mistrial.  *See United States v.*

*Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014).  "'Typically, a defendant is

entitled to a mistrial only upon a showing of substantial prejudice,' which occurs

11

when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different." *Id.* (quoting *United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003)) (citation omitted). "We have recognized that a trial judge is often 'in the best position to evaluate the prejudicial effect of a statement or evidence on the jury,' and that the prejudicial effects of an improper statement may be reduced or eliminated where 'the record contains sufficient independent evidence of guilt.'" *Id.* (quoting *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007)). "If a district court issues a curative instruction, we will reverse only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'" *United States v. Diaz*, 248 F.3d 1065, 1101 (11th Cir. 2001) (quoting *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998)).

There is no doubt that the government's remarks in question were improper, but the district court did not abuse its discretion in denying Williams's motion for a mistrial.[4] Ultimately, the remarks did not affect Williams's substantial rights in light of the overwhelming evidence against him, as outlined above. We do not believe there is a reasonable probability that the remarks changed the outcome of the trial. *See Grzybowicz*, 747 F.3d at 1311. Further, the district court said it looked at all the jurors and observed nothing alarming. Its observation is entitled

---

[4] We reject the government's argument that the remarks were proper to counter Williams's suggestion that auto sears were mere pieces of metal. Certainly there were other ways for the government to accomplish that goal.

12

to deference. *See Diaz*, 248 F.3d at 1101; *see also United States v. Sammour*, 816 F.3d 1328, 1331 (11th Cir. 2016) (observing, in the context of juror bias, that the district court is the "expert" because "[i]t interacts with jurors every day").

Moreover, the district court *twice* instructed the jury to disregard the government's remarks—the second time instructing it also to disregard the expert's response. "A jury is presumed to follow the instructions given to it by the district judge." *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005). The court even told the jury that the exchange was "not proper." We cannot say that the district court's admonition did not cure the government's inappropriate remarks. *See Diaz*, 248 F.3d at 1101.

Williams maintains on appeal that the government violated the golden rule. "A 'golden rule' argument asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." *Grossman v. McDonough*, 466 F.3d 1325, 1348 (11th Cir. 2006) (quoting *Hutchinson v. State*, 882 So. 2d 943, 954 (Fla. 2004)). Assuming, *arguendo*, that there was a golden rule violation, we conclude, for all the reasons given above, that Williams has made "no showing of prejudice"—i.e., "a reasonable probability that the outcome would have been different if the prosecutor had not made" the offending remarks. *See id.* at 1348 n.17; *see also United States v. McGarity*, 669 F.3d 1218, 1246 (11th Cir. 2012)

13

(holding that "the improper argument did not so prejudicially affect the defendants' rights that a different outcome might have been achieved in its absence"; explaining that the district court sustained the objection to the offending statements and admonished the jury not to consider the statements and that "the evidence against the defendants was overwhelming"), *abrogated on other grounds as recognized in United States v. Rothenberg*, 923 F.3d 1309, 1336 (11th Cir. 2019).

We affirm the district court's denial of Williams's motion for a mistrial.

### III.  SENTENCING ISSUES

Finally, Williams argues that his 78-month sentence was both substantively and procedurally unreasonable.

### A.  Substantive Reasonableness

Williams first contends that his sentence is substantively unreasonable.  He believes the district court imposed too long a sentence given his personal history and circumstances.

We review the substantive reasonableness of a sentence for abuse of discretion.  *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009).  "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the

14

proper factors.'" *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.* (quoting *United States v. Langston*, 590 F.3d 1226, 1236 (11th Cir. 2009)).

Under 18 U.S.C. § 3553(a), the district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing and shall consider, among other things, the need "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense," and to deter criminal conduct. 18 U.S.C. § 3553(a)(2). The court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1).

Although we do not presume that a sentence falling within the Guideline range is reasonable, we ordinarily expect such a sentence to be reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A sentence imposed well below the statutory maximum is another of indicator reasonableness. *See id.* (finding sentence was reasonable in part because it was well below the statutory maximum).

15

In this case, the district court heard Williams's objections to the Guideline calculations; testimony regarding the important role he plays caring for his sick wife, his children, and his mother; and his statements emphasizing that he was a first-time offender. The district court considered these things, noting as relevant his status as a first-time offender and his apparent desperation to provide for his family. The court also believed the base offense level in the presentence report was too high. Nevertheless, the court explained that the offense conduct was serious (54 machineguns sent into the stream of commerce); that Williams knowingly and willingly participated in that conduct; that he had sold heroin in addition to guns; that he had not accepted responsibility; and that his sentence needed to send a message to other potential offenders and promote respect for the law. In other words, the court considered the record and the § 3553(a) factors, and nothing indicates the court gave inordinate weight to any relevant factor or that it considered any improper factor. Moreover, the court varied downward from the presentence report recommendation and imposed a sentence well below the statutory maximum of ten years[5]—itself an indicator of substantive reasonableness. *See Gonzalez*, 550 F.3d at 1324.

Williams also argues the district court erred in not considering the median sentence imposed on first-time offenders from 2014–2016. Although there are

---

[5] *See* 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871

many problems with this statistical argument, it is enough to say that Williams did not present it to the district court and that Williams points to nothing that requires the district court to have considered it.

In addition, Williams contends the district court should have considered alternatives to imprisonment, including home detention, because of the impact his imprisonment has on his family.  We agree with the district court's response: "Almost everyone who is here in this courtroom as a defendant and sits in that chair where you are, 95 percent of them have families. . . .  [I]f that's a reason for me to impose a lighter sentence, . . . it would something that would be done in every case."  *See also United States v. DeVegter*, 439 F.3d 1299, 1307 (11th Cir. 2006) ("There is nothing inherently extraordinary about caring for a child or a sick parent.  Innocent young family members, including children, commonly suffer as a result of a parent's incarceration.  Although we can understand [the defendant's] desire to minimize his sentence's adverse effects on his family, the court should not have considered these circumstances in departing downward" (citation omitted).)

Williams has failed to show that his sentence is substantively unreasonable.

## B.  Procedural Reasonableness

Williams also asserts that his sentence is procedurally unreasonable.  He says the government failed to prove that he was a "prohibited person," warranting

17

a two-level enhancement pursuant to U.S.S.G. § 2K2.1(a)(4)(B), because there was no evidence that he possessed or used drugs or drug-related paraphernalia during the time period encompassing the offenses for which he was convicted.

We need not wade into the facts surrounding the timing of Williams's drug use. The presentence report assigned Williams a total offense level of 30, which included the two-level prohibited-person enhancement. Even if the two-level enhancement were removed, Williams's total offense level would have been 28. Thus, his Guideline imprisonment range, given his criminal history, would have been 78–97 months. *See* U.S.S.G. § 5 Pt. A. Sentencing Table. His current sentence of 78 months is already at the low end of that hypothetical range, and as discussed, his sentence is substantively reasonable. "[I]t would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006).

## IV. CONCLUSION

Williams's convictions and sentence are **AFFIRMED.**

18