[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10749

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIMMY DALE WILLIAMS,
a.k.a. JD,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20515-JEM-1

_____

Before LAGOA, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Jimmy Williams appeals his conviction for carjacking with the intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119(2) and 2. On appeal, Williams argues the trial evidence was insufficient to support his conviction because the government failed to prove he was one of the perpetrators of the carjacking. After careful review, we affirm.[1]

## I. GENERAL PRINCIPLES

We review *de novo* the sufficiency of the evidence presented at trial, "viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Grzybowicz*, 747 F.3d 1296, 1304 (11th Cir. 2014) (quotation marks omitted).

Evidence is sufficient to support a conviction if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Jiminez*, 564 F.3d 1280, 1284-85 (11th Cir. 2009) (quotation marks omitted). Under this standard, the evidence need not exclude every reasonable hypothesis of innocence "as long as a reasonable factfinder choosing from among reasonable constructions of the evidence could find that the evidence establishes guilt beyond a reasonable doubt." *United*

---

[1] Williams does not appeal his 300-month sentence.

*States v. Ochoa*, 941 F.3d 1074, 1102 n.18 (11th Cir. 2019) (quotation marks omitted).

To convict a defendant of carjacking, in violation of 18 U.S.C. § 2119, the government must prove he "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Diaz*, 248 F.3d 1065, 1096 (11th Cir. 2001) (quotation marks omitted).

## II.  SUFFICIENCY OF THE EVIDENCE

Here, the trial evidence was more than sufficient to support a jury's finding that Williams committed the carjacking.  For starters, Renato Almeida, the carjacking's victim, and an eyewitness testified about the carjacking, where Almeida's wallet with credit cards and red Mustang were stolen.  Video surveillance showed the carjacking and also Williams later using Almeida's credit cards.  Williams was subsequently caught driving and wrecking Almeida's car.  We start with Almeida's testimony.

In the early morning hours of March 7, 2021, Almeida drove two women in his red Mustang to a motel.  After he got out of his car, Almeida spoke with another man in a plaid shirt for about ten minutes.[2]  As they spoke, two other men Almeida did not know

---

[2] Prior to trial, the district court, over Williams's objection, granted the government's motion *in limine* and excluded evidence of Almeida's purported solicitation of prostitutes and drug activities at the motel where the carjacking occurred.  At trial, Williams renewed his objection, arguing such evidence

arrived, one of whom was wearing a white shirt.  The two men beat Almeida on the head and took his wallet and phone from his pockets.  The two men also demanded Almeida give them the key to his car, which he did.

Rafael Negron, a motel security guard who witnessed part of the carjacking, also testified.  Negron, while responding to a report of a commotion, saw a man in a white shirt run to a red Mustang.  Negron had seen the man in the white shirt on the motel premises earlier that day and on previous occasions.  Negron recognized the man's face and also his walk because he limped.  Negron heard the man's "partner or friend" refer to the man in the white shirt as DJ or JD and ask him, "do you have the keys."  The man in the white shirt answered, "yes, I got it."  Negron took "a good look" at the man in the white shirt as he got into the red Mustang, and the security guard knew the car did not belong to the man.  After the men drove away, Negron found Almeida beaten up and unable to stand.

Video from the motel's surveillance cameras corroborated Almeida's and Negron's testimony.  One video showed, *inter alia*, the victim Almeida arriving at the motel with two women in his Mustang, exiting his car to speak with a man in a plaid shirt, and walking around the motel premises with him.  Then, while standing outside a motel room, Almeida is approached by two

---

showed Almeida was not an honest or reliable witness.  The district court overruled Williams's objection.  On appeal, Williams does not challenge this evidentiary ruling.

other men, one of whom is wearing a white shirt and walking with a limp. The two men knock Almeida to the ground, repeatedly punch and kick him, and take several items from him, including his cell phone and shoes, before fleeing. The man in the white shirt runs around the side of the building, while his partner jumps into a waiting white car that drives away.

Other videos showed Negron walking across the motel parking lot as the man in the white shirt runs with a limp to the red Mustang, unlocks the car, gets in, and drives away. Negron stops and watches the man enter the red Mustang before proceeding on his way. Around the side of the motel, Negron finds Almeida, who is on the ground and struggling to stand up. Negron escorts Almeida around the side of the motel, where Almeida's red Mustang is now gone from the parking lot.

Other trial evidence showed that later on May 7, Almeida's credit card from his stolen wallet was used several times without authorization. Surveillance camera photographs and video from some of these establishments, including a gas station, show defendant Williams using the stolen credit card and also riding in the red Mustang.

The government also presented evidence that the morning after the carjacking, on May 8, 2021, Williams committed a hit-and-run while driving the red Mustang. Natasha Woods testified that she heard a loud noise in her family's front yard. Woods went outside and saw that a red Mustang had run through a gate and hit her mother's car. A man, later determined to be Williams, jumped

out of the Mustang's window and ran. Woods and two other family members chased Williams, and Woods noticed he was limping. Williams eventually gave up, the police were called to the scene, and Williams was arrested.

Finally, on May 8, investigators showed Almeida and Negron a photographic line-up. While Almeida was unable make an identification, Negron quickly, and with complete certainty, identified defendant Williams as the man who ran to the red Mustang with a limp, got in the car, and drove away.

All of this evidence, taken together, overwhelmingly establishes that Williams was one of the two men who attacked Almeida at the motel and that he was the man who took Almeida's car key and drove away in his red Mustang.

Williams primarily argues that Almeida was an unreliable witness, citing trial evidence that Almeida: (1) was drinking in night clubs "for hours" before the carjacking, (2) had no recollection of the thirty minutes preceding the carjacking, (3) appeared intoxicated to a police officer who responded at the scene, and (4) could not identify Williams as the perpetrator.[3] But the jury

---

[3] Williams points out that during a side bar conference, the district court described Almeida's testimony as "ridiculous." Williams takes this comment out of context, as it referred only to Almeida's purported explanation for why he was at the motel, and not to his description of the carjacking. In fact, the district court also observed that Almeida's reason for being at the motel—even if to engage in prostitution or a drug deal—did not matter because there was video of the carjacking, and a defendant cannot "carjack even Johns or junkies."

"has exclusive province over the credibility of witnesses." *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014). We will disregard a jury's credibility determination only if the challenged testimony is "incredible as a matter of law," meaning that it "relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (quotation marks omitted).

Here, Williams has not given us any reason to disregard the jury's decision to credit Almeida's testimony. Almeida's testimony about the carjacking related to events he could (and did) observe and that were consistent with the laws of nature. *See id.* To be sure, Almeida admitted he had consumed alcohol prior to the carjacking, could not remember some details about the incident, and was unable to identify Williams in the photographic line-up. But the significant aspects of Almeida's testimony, including that his attackers beat him, took his wallet, and forced him to relinquish his car key before stealing his red Mustang, were corroborated by surveillance videos and Negron's eye-witness testimony. And of course, Williams later being in possession of Almeida's credit cards and red Mustang also provide substantial corroboration.

Further, Williams's defense counsel drew the jury's attention to the deficiencies in Almeida's testimony during cross-examination and argued in closing that Almeida's testimony could not be trusted. The jury remained free to evaluate Almeida's credibility and assign weight to it accordingly. *See Feliciano*, 761

F.3d at 1206. Williams has not shown Almeida's testimony is incredible as a matter of law.

Notably, even excluding Almeida's testimony, the government presented more than sufficient evidence to prove beyond a reasonable doubt that Williams was one of the perpetrators of the carjacking offense. Specifically, (1) Negron identified Williams as the man in the white shirt who, after attacking Almeida, got into Almeida's red Mustang and drove away; (2) the motel's surveillance videos showed a limping Williams beating Almeida, taking things from his pockets, and then driving off in Almeida's car; (3) Negron explained he recognized Williams, in part, from his limp, which the surveillance videos also showed; (4) other surveillance images showed that Williams later rode to a gas station in Almeida's red Mustang, where he used Almeida's credit card stolen during the carjacking; and (5) then Williams crashed Almeida's red Mustang and ran with a limp from the accident scene, only to be caught and arrested.

Based on the trial evidence, a reasonable jury could find beyond a reasonable doubt that Williams committed the charged carjacking offense. Accordingly, we affirm his conviction.

**AFFIRMED.**