**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11903

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ROGER LEE CALDWELL, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00334-KKM-AEP-1

_____

Before ABUDU, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Roger Caldwell, Jr., was convicted of production of child pornography, transportation of a minor with the intent to engage

in sexual activity, and possession of child pornography. He now appeals and challenges the district court's admission of certain out-of-court statements during his trial. We find that any error in admitting this testimony was harmless and affirm Caldwell's convictions.

## I. BACKGROUND

In March 2022, law enforcement received a call alleging that Caldwell had been sexually abusing his ex-fiancée's minor daughters for several years. Police spoke with the victims and their mother and recovered nearly 150 images of child pornography from the household computer in a folder labeled "rogerspics."

Thereafter, Caldwell was charged with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count One), transportation of a minor with intent to engage in sexual activity, in violation of 18 U.S.C. § 2423(a) (Counts Two and Three), and possession of child pornography depicting a minor under the age of twelve, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Four). Caldwell pleaded not guilty to these charges and proceeded to trial in February 2024. We will briefly summarize the trial evidence relevant to our analysis.

Detective Alexander Nikias testified that he was the one to respond to the 911 call regarding possible child abuse. The mother of the victims informed him that Caldwell, her former fiancé of about six years, had been sexually abusing her two daughters. Detective Nikias testified that he spoke to the victims, but as he was about to testify to these conversations, Caldwell objected to this

testimony, in relevant part, as inadmissible hearsay. The court overruled the objection "to the extent [Detective Nikias was] going to explain [his] further investigation steps," and Caldwell declined to have a limiting instruction read.

Detective Nikias then recounted his three-to-four-minute conversation with the older of the two victims, stating that:

> AN recounted a series of allegations of sexual abuse stemming from when she was younger, starting off with that the defendant – that [Caldwell] forced her to suck his you know what was one of the first things she told me. She recounted several instances through several states over the years of ongoing sexual abuse, as well as neglect for forcing her to drink alcohol and smoke marijuana.

When Detective Nikias began to discuss his conversation with the younger victim, AM, Caldwell reasserted his hearsay objection, which was again overruled. Detective Nikias proceeded with his testimony and explained that, during his short conversation with AM, she "recounted several instances of what appeared to be very suspicious behavior from [Caldwell], including choking her out with a blue towel and being alone with her sister when they were both naked."

Detective Nikias further testified that he had a second conversation with the victims "[t]o get clarification of where the events had occurred and also [see] if there was any physical evidence that needed to be collected." He indicated that, during these supple-

mental conversations, AM "recounted instances of her and her sister being naked in the room alone with [Caldwell], him removing the bed sheets beforehand, and forcing her to wear her mother's lingerie," and AN provided him with a pair of underwear that she had been wearing during "the last sexual incident" with Caldwell approximately two days prior. Later laboratory testing showed the presence of semen and determined that it was highly probable that both AN and Caldwell's DNA were present in the underwear.

AN, who was fifteen years old at the time of trial, testified that, around the time she turned eight, her family moved with Caldwell from Florida to West Virginia. She explained that the abuse began shortly after the move when Caldwell forced her to perform oral sex on him on a day she came home sick from school. Caldwell continued this behavior "[a]bout once or twice a week, sometimes three times" while they lived in West Virginia. Caldwell would also threaten to harm AN, her mother, and her younger sister AM. Within a year, the family moved to Illinois, and the abuse escalated, as Caldwell attempted to rape AN and would hit her when she often "t[old] him no." During this time, AN also found Caldwell messing around with" AM.

AN further testified that, from the ages of 9 to 11, the family lived at multiple locations in Florida, and Caldwell continued sexually abusing her during that time. On one occasion where Caldwell forced her to perform oral sex, AN thought he might have taken a photo of her. This photograph was recovered from Caldwell's cell phone and had been admitted into evidence prior to

AN's testimony. While Caldwell's face was not visible in the image, one could see a distinctive belt that Caldwell "always wore." The government also showed AM the photograph, and she identified the subjects of the image as Caldwell and herself at nine years old.

In continuing her testimony, AN elaborated that the family moved to Ohio when she was eleven, where Caldwell's physical and sexual abuse of both her and her sister continued. When the family decided to move back to Florida in 2022, AN and AM made a return trip to Ohio with Caldwell to finish packing. During that weeklong road trip, Caldwell sexually assaulted both girls multiple times, and he would occasionally show AN pornography and force her to drink alcohol. AN thereafter told her mother, who had broken off her relationship with Caldwell, about the abuse, and she called the police. AN further recalled speaking to the police and giving them the pair of underwear she had worn during the trip from Ohio.

AM, who was 14 at the time of trial, testified that the first instance of sexual abuse she remembered involved Caldwell forcing her to perform oral sex in exchange for a piece of chocolate. The next time, he "pinned [her] to the couch" and raped her, and this abuse continued "[a]ny day that [her] mother was at work." She also remembered Caldwell at some point showing her pornography. AM further recalled verbal threats Caldwell made to her and a time where he choked her with a towel when she refused to take off her clothes. AM also discussed the trip to Ohio and stated that Caldwell raped her in each of the hotels in which they stayed.

Following the four-day trial, the jury convicted Caldwell on all counts, and the district court sentenced him to life imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

We generally review a district court's evidentiary rulings for an abuse of discretion. *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009). Under this deferential standard, we "must affirm unless we find that the district court has made a clear error of judgment[] or has applied the wrong legal standard." *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018) (citation omitted). Further, "an abuse of discretion will not warrant reversal where the resulting error was harmless." *Id.*

## III. DISCUSSION

On appeal, Caldwell argues that the district court abused its discretion by permitting Detective Nikias to testify as to what AN and AM told him at the outset of his investigation. Caldwell contends that these out-of-court statements were inadmissible hearsay because they were "clearly offered for the truth of the matter asserted." *See* Fed. R. Evid. 801(c), 802.

We will assume that Caldwell is correct and that the district court abused its discretion in admitting these statements. As an initial matter, Detective Nikias's testimony regarding his interviews with AN and AM did not implicate Caldwell's alleged possession of child pornography. As such, the evidence to support Caldwell's guilt on Count Four was unaffected by any potentially erroneous hearsay ruling. *See* 18 U.S.C. § 2252(a)(4)(B), (b)(2).

24-11903                Opinion of the Court                7

As to the remaining counts, reversal is not warranted because such an "error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." *Barton*, 909 F.3d at 1331 (citation modified). Despite Caldwell's assertions to the contrary, the government presented "overwhelming evidence" independent of Detective Nikias's testimony for a jury to find, beyond a reasonable doubt, that Caldwell was guilty of Counts One, Two, and Three. *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999); *see Barton*, 909 F.3d at 1331. Indeed, the testimonies of AN and AM, which were far more detailed than that of Detective Nikias, alone support the jury's guilty verdicts on these remaining counts. *See United States v. Ransfer*, 749 F.3d 914, 927 (11th Cir. 2014).

For Count One, production of child pornography, AN testified that she saw Caldwell take a photo of her during one of the many times she was forced to perform oral sex. *See* 18 U.S.C. § 2251(a), (e); *United States v. Grybowicz*, 747 F.3d 1296, 1305 (11th Cir. 2014). While the image did not show Caldwell's face, AN identified Caldwell and herself, at age nine, as the subjects of the photograph, noting that one could see Caldwell's distinctive belt that he "always wore." As to Counts Two and Three, transportation of a minor with intent to engage in sexual activity, both AN and AM testified that, during a road trip from Florida to Ohio, Caldwell sexually assaulted them several times. *See* 18 U.S.C. § 2423(a).

The government also presented additional physical evidence that corroborated AN's and AM's testimony and independently supported Caldwell's guilt. For example, the jury saw (1) the underwear AN gave the police after she returned from the Ohio trip, which likely contained both her and Caldwell's DNA, (2) receipts and photos from the Ohio trip, (3) records of child pornography found in the "rogerspics" computer folder, (4) the pornographic image of AN and Caldwell, (5) photos of Caldwell wearing the same belt, and (6) the belt itself.

Given the substantial weight of the evidence against Caldwell, we find no reversible error in the district court's decision to admit Detective Nikias's testimony regarding the content of his conversations with the minor victims.

## IV. CONCLUSION

Caldwell's convictions are **AFFIRMED**.